D. Victoria Baranetsky (SBN 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 809-3160
Fax: (510) 849-6141
vbaranetsky@revealnews.org

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE, <br><br> Defendant. | Case No. _____ <br><br> **COMPLAINT FOR INJUNCTIVE RELIEF** |

## INTRODUCTION

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief. The Center for Investigative Reporting ("CIR" or "Plaintiff") seeks expedited processing and release of agency records requested from Defendant Department of Justice ("DOJ").

2.      On March 23, 2017, Plaintiff submitted a Freedom of Information Act request (the "Request") to DOJ, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") seeking records related to the federal government's tracing of firearms collected by local law enforcement. Those records include copies of all policies and guidelines on the trace record system as well as aggregated data.

3.      To date, Defendant has failed to comply with statutory deadlines and has provided

no response to Plaintiff.

4.    DOJ's failure to provide any response is of particular public concern because the Request pertains to the persistent lack of transparency involving firearm tracing.  In light of recent shootings, lack of access to this information has become highly controversial and is currently subject to intense public debate.  The government's policies concerning how it must report tracking data implicate the lives of thousands of Americans, who are vulnerable to becoming victims to gun violence.

5.    Moreover, as described below DOJ has a track record of failing to inform individuals about tracing data, even when it is permissible under the law.  Accordingly, the public interest in the release of the DOJ records at issue is substantial.

6.    Plaintiff now asks the Court for an injunction requiring DOJ to promptly release the withheld records.

## PARTIES

7.    Plaintiff CIR publishes *Reveal* an online news site at revealnews.org and *Reveal* a weekly public radio show with approximately 1 million listeners a week.  Founded in 1977, as the first national investigative news organization, CIR has received multiple awards for its reporting. CIR is a non-profit established under the laws of the State of California, with its primary office in Emeryville, California.

8.    Defendant DOJ is a department of the executive branch of the U.S. government and an "agency" within the meaning of 5 U.S.C. §552(f)(1).  ATF and Office of Information Policy ("OIP") are components of DOJ.  DOJ has its headquarters in Washington, D.C., and offices all over the country, including in Oakland, California.

## JURISDICTION

9.    The Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i).  This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1436, and 5 U.S.C. §§ 701–706.

//
//

## VENUE AND INTRADISTRICT ASSIGNMENT

10.     Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e) and 1402.  Plaintiff CIR has its principal place of business in this district.

11.     Assignment to the Oakland Division is proper pursuant to Local Rule 3-2(c) and (d) because a substantial portion of the events giving rise to this action occurred in Alameda County, where Plaintiff's principal place of business is located.

## FACTUAL BACKGROUND
### Trace Firearm Records Held by ATF

12.     ATF is the lead federal law enforcement agency charged with administering and enforcing federal laws related to firearms and explosives commerce.

13.     The mission of ATF "is to protect communities from violent criminals, criminal organizations, the illegal use and trafficking of firearms, the illegal use and storage of explosives, acts of arson and bombings, acts of terrorism, and the illegal diversion of alcohol and tobacco products."  Department of Justice, *Organization, Mission and Functions Manual, Bureau of Alcohol,      Tobacco,      Firearms      and      Explosives,*      Sept.      9,      2014 https://www.justice.gov/jmd/organization-mission-and-functions-manual-bureau-alcohol-tobacco-firearms-and-explosives.

14.     As part of its aegis, ATF collects specific information from local law enforcement to track individual firearms, including the manufacturer, model, caliber, and serial number.  *See* William J. Krouse, *Gun Control: Statutory Disclosure Limitations on ATF Firearms Trace Data and Multiple Handgun Sales Reports* 2, May 27, 2009, https://fas.org/sgp/crs/misc/RS22458.pdf ("ATF Report").  ATF firearm specialists also systematically document the "firearm's transfer documents, which Federal Firearms Licensees (FFLs) are required to maintain, as a firearm passes through   the   commercial   chain   of   distribution,   from   manufacturer/importer,   to wholesaler/distributor, and to first retail seller."  *Id.*  By collecting this this so-called "trace data" which catalogues where and to whom the firearm was last transferred, "investigators are often able to generate new leads to solve firearms-related crimes."  *Id.*

15. For years, ATF released firearm trace data. *See* David Olinger, *Police guns in the hands of criminals*, THE DENVER POST, Sept. 20, 1999, http://extras.denverpost.com/news/gun0920a.htm (analyzing "thousands of ATF firearms tracing records from 1994 through 1998").

16. In 2008, Congress included in the Consolidated Appropriations Act, 2008 (P.L. 110-161) a rider that prohibited ATF from disclosing firearm trace data and sales reports data for any purpose other than a law enforcement investigation or agency licensing. *See* ATF Report at 1. As a result, this rider, known as the "Tiahrt" amendment made previously public data secret. *Id*; *see also*, James V. Grimaldi and Sari Horowitz, *Industry pressure hides gun traces, protects dealers from public scrutiny*, WASH. POST, Oct. 24, 2010, http://www.washingtonpost.com/wp-dyn/content/article/2010/10/23/AR2010102302996.html.

17. The Tiahrt amendment also prohibited ATF from maintaining searchable database. *Id.* Instead, ATF traces guns used in commission of crime through a "card catalog and phone system" according to a recent news article. Erin Dooley, *Here's why the federal government can't study gun violence*, ABCNEWS.COM, Oct. 6, 2017, http://abcnews.go.com/US/federal-government-study-gun-violence/story?id=50300379.

18. Despite its burdensome restrictions, the Tiahrt amendment explicitly allows "the release of aggregate statistical data on illegal gun trafficking or statistical information on the U.S. firearms industry." ATF Report at i. It also allows for information about the ATF's general procedures and policies involving trace data to be disclosed. *See generally* ATF Report.

19. Information involving trace records is vitally needed to inform the ongoing public and congressional debates about ATF's procedures for tracking firearms and the public's access to trace data. Since the passage of Tiahrt amendment many public service groups, including Mayors Against Illegal Guns, have advocated for repealing the Tiahrt amendment, believing that access to ATF's information would help local police departments track down illegal guns and diminish crime. Heather Knight, *Mayors Fight Gun Measure*, S.F. CHRONICLE, June 19, 2007, http://www.sfgate.com/politics/article/SAN-FRANCISCO-Mayors-fight-gun-measure-

2585747.php.

20.     Numerous police organizations have also opposed the Tiahrt amendment, such as International Association of Chiefs of Police, International Brotherhood of Police Officers, Major Cities Chiefs Association (which represents the 67 largest police departments in the United States), Police Executive Research Forum, Police Foundation, Hispanic American Police Command Officers Association, National Black Police Association, National Latino Peace Officers Association, National Organization of Black Law Enforcement Executives and the School Safety Advocacy Council.  *Gun Bill Urges Congress to Repeal Tiahrt Amendment*, ABC10NEWS.COM, June 12, 2007, http://www.10news.com/news/gun-bill-urges-congress-to-repeal-tiahrt-amendment.

21.     Public outcry over the effects of the Tiahrt amendment led Congresswoman Barbara Lee (D-CA) to introduce in 2015 the Tiahrt Restrictions Repeal Act, H.R. 1449, 114th Cong. § 2 (2016) which would have repealed some of the amendment's restrictions.  Despite considerable public support, the measure ultimately failed.

22.     More recently gun violence has spiked national attention, once more.  Following the mass shootings in Sandy Hook and Orlando, and the even more recent massacres in Las Vegas and Texas, there has been extensive reporting by local, national, and international news outlets on gun use in the United States.  *See, e.g.*, Dooley, *supra*; Jessica Chasmar, *Seattle to destroy $30K in used police guns so they don't get 'into the wrong hands'*, THE WASH. TIMES, June 30, 2016, https://www.washingtontimes.com/news/2016/jun/30/seattle-to-destroy-30k-in-used-police-guns-so-they/; Laura Morel, *82,000 stolen guns are missing in Florida*, REVEAL, Nov. 1, 2017, https://www.revealnews.org/article/82000-stolen-guns-are-missing-in-florida/;  Christina Jewett, *New California law could keep guns away from people like Omar Mateen*, REVEAL, June 15, 2016, https://www.revealnews.org/blog/new-california-law-could-keep-guns-away-from-people-like-omar-mateen/; Max Fisher and Josh Keller, *What Explains U.S. Mass Shootings. International Comparisons Suggest an Answer*, N.Y. TIMES, Nov. 7, 2017, https://www.nytimes.com/2017/11/07/world/americas/mass-shootings-us-international.html; *America's gun culture in 10 charts*, BBC.COM, Nov. 6, 2017, http://www.bbc.com/news/world-us-

canada-41488081.

23.     This atmosphere has also led to heightened public concern and media attention over government operations tracking firearms and access to ATF's trace data. *See, e.g.,* Greg Moran and Lyndsay Winkley, *ATF warns Southern California law enforcement officers may be illegally selling guns,* THE SAN DIEGO UNION-TRIBUNE, April 12, 2017, http://www.sandiegouniontribune.com/news/public-safety/sd-me-atf-memo-20170412-story.html; Dan Friedman, *How the Government Makes Gun Records Impossible to Trace,* VICE, Sept. 6, 2016, https://www.vice.com/en_us/article/wdbd9y/the-atfs-nonsensical-non-searchable-gun-databases-explained-392; Bryan Schatz, *Outgunned and Outmanned,* MOTHER JONES, Sept. 2016, http://www.motherjones.com/politics/2016/09/atf-nra-battle-guns/.-Y; Ann Givens, *The ATF traced more firearms in the past 12 months that in any year on record,* BUSINESS INSIDER, Sept. 27, 2017, http://www.businessinsider.com/the-atf-traced-more-firearms-in-the-past-year-than-in-any-year-on-record-2017-9. There is reason to believe former duty weapons from law enforcement agencies are being used in gun crimes, which the data may likely reveal. *See* Moran and Winkley, *supra.*

24.     CIR has repeatedly written on these subjects in recent years. *See, e.g.,* Christina Jewett, *New California law could keep guns away from people like Omar Mateen,* REVEAL, June 15, 2016, https://www.revealnews.org/blog/new-california-law-could-keep-guns-away-from-people-like-omar-mateen/; Matt Drange, *Gun transfers among family members remain largely unregulated,* REVEAL, July 2 , 2015, https://www.revealnews.org/article/gun-transfers-among-family-members-remain-largely-unregulated/; Laura Morel, *82,000 stolen guns are missing in Florida,* REVEAL, Nov. 1, 2017, https://www.revealnews.org/article/82000-stolen-guns-are-missing-in-florida/; Laura Morel, *Thieves are breaking into Florida gun stores, often in brazen ways,* REVEAL, Nov. 1, 2017, https://www.revealnews.org/article/thieves-are-breaking-into-florida-gun-stores-often-in-brazen-ways/.

25.     Release of policies and procedures around trace data, as well as aggregate information would inform the public on this important and urgent topic of public concern. *Id.*

**The FOIA Request**

26.     By letter dated March 23, 2017, Plaintiff submitted through its Reveal Investigative Fellow, Mr. Alain Stephens, a FOIA request to DOJ (hereinafter "the Request") seeking information about ATF's policies and procedures involving trace reports and aggregated information obtained from trace reports.  Notwithstanding the limitations of the Tiahrt amendment, the Request demanded information that is explicitly disclosable under the amendment.  A copy of the Request is attached hereto as Exhibit 1.

27.     Plaintiff's Request seeks:

    a.   The National Tracing Center's internal completion codes for law enforcement weapons, current or former.

    b.   Any and all memos, communications, reports, and other to documents related to E-Trace matches of current or former law enforcement weapons, from 2006 to the present.

    c.   Total number of weapons traced back to former law enforcement ownership, annually from 2006 to the present.

    d.   Copies of any and all communications notifying law enforcement agencies when their current or former weapons have entered or been involved in an E-Trace.

    e.   Copies of policies and guidance dictating how the agency handles law enforcement weapons in E-Trace.

28.     Plaintiff sought expedited processing of the Request on the grounds that there is a "compelling need" for these records because the information requested is urgently needed by an organization primarily engaged in disseminating information in order to inform the public about actual or alleged federal government activity.  5 U.S.C. § 522(a)(6)(E).

29.     Plaintiff sought a waiver of search, review, and reproduction fees on the grounds that disclosure of the requested records is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  *Id.* § 552(a)(4)(A)(iii).

30.    Plaintiff also sought a waiver of search and review fees on the grounds that the ACLU qualifies as a "representative of the news media" and that the records are not sought for commercial use.  *Id.* § 552(a)(4)(A)(ii).

31.    On May 24, 2017, Mr. Stephens sent an email to foiamail@atf.gov to confirm that ATF received the Request.  A true and correct copy of the email is attached as Exhibit 2.

32.    By letter dated May 26, 2017, ATF responded with an acknowledgement of the Request.  A true and correct copy of the letter is attached as Exhibit 3.  The letter states that due to an "administrative oversight" ATF had "not opened [the Request] as a FOIA/Privacy Act request." Exhibit 3.

33.    For the next several months, Mr. Stephens corresponded with DOJ officials and inquired if the Request could be narrowed to expedite processing.

34.    On September 12, 2017, CIR Managing Editor, Andrew Donohue contacted DOJ to inquire on the status of the request.  A true and correct copy of the email is attached as Exhibit 4. Plaintiff received no response.

35.    On November 3, 2017, CIR General Counsel, D. Victoria Baranetsky sent a letter to OIP and ATF requesting an immediate response and processing of the Request.  A true and correct copy of the letter (without attachments) is attached as Exhibit 5.  Plaintiff received no response.

36.    To date, DOJ has made no final determination on the Request.

37.    DOJ has failed to comply with FOIA's requirement that an agency will respond to the Request within the 20 business days.

38.    Having exhausted all administrative remedies, Plaintiff now seeks injunctive relief.

## CAUSE OF ACTION

### Violation of Freedom of Information Act

39.    Plaintiff repeats and realleges paragraphs 1-38.

40.    DOJ is subject to FOIA and must therefore release in response to a FOIA request any disclosable records in its possession at the time of the request and provide a lawful reason for withholding any materials as to which it is claiming an exemption.

41.     DOJ has no lawful basis for declining to release the records requested by Plaintiff under FOIA.

42.     DOJ has failed to act on Plaintiff's Request within the 20 business days required by FOIA. *See* 5 U.S.C. § 552(a)(6)(A)(i).  Accordingly, Plaintiff is deemed to have exhausted their administrative remedies under FOIA.

43.     Plaintiff is entitled to an order compelling DOJ to produce records responsive to the Request.

## REQUESTED RELIEF

WHEREFORE, Plaintiff prays that this Court:

1.     Declare that Defendant DOJ violated FOIA by failing to comply with the 20 business days required by FOIA and notifying Plaintiff of any determination;

2.     Declare that DOJ violated FOIA by failing to determine whether to provide expedited processing within 10 days and thereafter notifying Plaintiff of such determination;

3.     Declare that the documents sought by their FOIA request, as described in the foregoing paragraphs, are public under 5 U.S.C. § 552 and must be disclosed;

4.     Order Defendant DOJ to provide the requested documents to Plaintiff within 20 business days of the Court's order, or in the alternative, provide for expedited proceedings to adjudicate Plaintiff's rights under FOIA;

5.     Award Plaintiff the costs of this proceeding, including reasonable attorneys' fees, as expressly permitted by FOIA; and

6.     Grant Plaintiff such other and further relief as this Court may deem just and proper.

DATED: November 13, 2017                     Respectfully submitted,


By: /s/
D. Victoria Baranetsky (SBN 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 809-3160
vbaranetsky@revealnews.org

Attorney for Plaintiff