ALEX G. TSE (CABN 152348)
Acting United States Attorney
SARA WINSLOW (DCBN 457643)
Chief, Civil Division
ROBIN M. WALL (CABN 235690)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7071
    Fax: (415) 436-6748
    robin.wall@usdoj.gov

Attorneys for Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CENTER FOR INVESTIGATIVE REPORTING,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>    Defendant. | Case No. 3:17-cv-06557-JSC<br><br>**DECLARATION OF CHARLES J. HOUSER IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

# DECLARATION

1. I, Charles J. Houser, am the Chief, National Tracing Center ("NTC") Division in the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), U.S. Department of Justice. I have served in this position since 2005.

2. The statements made in this declaration are based on knowledge that I have acquired in the performance of my official duties. I have read and am familiar with the Complaint in this action.

3. The purpose of this declaration is to provide information about the Firearms Tracing System ("FTS") and to explain the basis for ATF's decision to provide Plaintiff most, but not all, of the information requested under the Freedom of Information Act ("FOIA").

4. As Chief, National Tracing Center Division, I am responsible for the oversight of ATF's firearms tracing operations, various associated programs and approximately 340 personnel at the NTC in order to produce investigative leads for criminal investigations involving firearms used or suspected to have been used in crimes.

## ATF's Law Enforcement Mission

5. ATF is a criminal and regulatory enforcement agency and has been a component of the U.S. Department of Justice since 2003. Prior to 2003, ATF and its predecessor bureaus functioned within the U.S. Department of the Treasury (except for a brief period during the Prohibition era). The Homeland Security Act of 2002 (Pub. L. No. 107–296, 116 Stat. 2135 (2002)) split the missions and functions of ATF into two agencies: the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and the Alcohol and Tobacco Tax and Trade Bureau ("TTB"). Under that Act, the ATF's functions and responsibilities were transferred to the Department of Justice, and TTB's functions and responsibilities remained with the U.S. Department of the Treasury.

6. ATF is the federal agency responsible for, among other things, enforcing Federal firearms laws including the Gun Control Act of 1968 ("GCA"), 18 U.S.C. §§ 921-930 (2000) (originally enacted as Act of Oct. 22, 1968, Pub. L. No. 90-618, § 1, 82 Stat. 1213). The GCA established a licensing system for persons engaged in manufacturing, importing, dealing, and collecting firearms. ATF enforces the licensing provisions of the GCA, which, among other things, regulates the interstate movement of firearms.

## Firearms Tracing

7.     Pursuant to the GCA, the U.S. Attorney General is authorized to administer firearms tracing. The Attorney General has delegated ATF the sole federal agency authorized to trace firearms.

8.     To carry out its firearms tracing functions, ATF maintains the FTS, which is a law enforcement information database. The FTS is maintained at the National Tracing Center ("NTC"). In response to requests from law enforcement, the NTC provides ATF field agents and other law enforcement agencies with Firearms Trace Result Reports commonly referred to as "trace data" as well as investigative leads obtained from the traced firearm.

9.     "Tracing" a firearm is the systematic tracking of a recovered firearm from its manufacturer or importer, through its subsequent introduction into the distribution chain (wholesaler/retailer), to identify an unlicensed purchaser. A firearm trace begins when the NTC receives a request from a Federal, State, local, or foreign law enforcement agency that has recovered a firearm or suspects a certain firearm has been used in crime. The ATF also requests traces in connection with the investigations that it conducts. Firearms for which traces are requested typically have been recovered at the scene of a crime or from the possession of a suspect, felon, or other person who is prohibited from owning the firearm, or may have been purchased by law enforcement in an undercover capacity.

10.    To conduct a trace, the requesting agency must provide the NTC with the firearms type (i.e., pistol, revolver, shotgun), manufacturer, importer if applicable, caliber, and the serial number of the recovered firearm. In addition the requesting agency also typically provides other associated information, like a crime code, recovery location, and possessor information. In a typical case, after receiving a trace request, NTC personnel contact the manufacturer or importer to determine when and to whom the firearm in question was sold. When the NTC contacts an FFL requesting information, ATF informs the licensee only about the firearm involved in the trace; the FFL is not informed of any circumstances relating to the alleged criminal conduct nor the identity of the law enforcement agency that recovered the firearm.

11.    In most instances, the manufacturer or importer has sold the firearm to an FFL wholesaler. NTC personnel then contact the wholesaler to determine when and to whom the firearm in question was sold, usually to an FFL retailer. The tracing process continues as long as records allow and

is considered successful when ATF can identify an unlicensed purchaser, commonly, the first retail purchaser (a non-FFL) from an FFL. ATF's tracing process generally stops at the first retail purchase because any subsequent disposition of the firearm by a non-FFL is not subject to GCA record-keeping or reporting requirements.

12. When a firearm is traced to domestic law enforcement or U.S. government agencies, the NTC has the ability to continue to trace the firearm through the law enforcement or government agency to determine the firearm's subsequent disposition, if such exists. For example, it is NTC policy to close routine priority traces with the "S5" close-out code in the FTS, indicating "THIS FIREARM WAS TRACED TO A GOVERNMENT AND/OR LAW ENFORCMENT AGENCY." After receiving an S5 result, the trace requestor may ask the NTC to reopen and continue the trace by contacting the law enforcement or government agency that the firearm was traced to in order to obtain additional information. There are three additional close-out codes in the FTS (S6, SH, DN) that indicate a firearm was traced to a law enforcement or government agency.

13. The "trace data" are maintained in the FTS and include the eight-digit identification number of the FFLs involved in the sale or transfer of the firearm along with any information regarding the retail purchaser of the firearm. Law enforcement agencies, including ATF, may use the "trace data" to link a suspect to a firearm-related criminal investigation, to identify any potential firearms traffickers, and to detect patterns in the sources and kinds of firearms that are used in a crime.

14. The NTC forwards the firearms tracing results directly to the requesting law enforcement agency. Approximately 65 percent of the requests in any given year are successfully traced to an individual purchaser of the firearm. A small percentage are traced to a foreign government or dealer or to the U.S. government or law enforcement agency, some are linked to an FFL theft, and others are found to have no nexus to the U.S. The remainder cannot be traced for a variety of reasons, most commonly due to an inadequate firearms description or a firearm made prior to 1968.

15. Since 2005, ATF has made available an eTrace system to authorized law enforcement. ATF's eTrace is a paperless firearms trace request submission system and interactive trace analysis module that facilitates firearms tracing and assists ATF's efforts to combat firearms trafficking. eTrace provides the electronic exchange of crime gun incident data in a Web-based environment with a portal to

the FTS database. The system provides real-time capabilities that allow law enforcement agencies to submit electronic firearms trace requests, monitor the progress of traces, retrieve completed trace results, and query firearms trace-related data in the FTS database. eTrace is used by nearly 7,000 law enforcement agencies in the U.S. as well as in 44 different countries, to include Canada, Mexico, the United Kingdom, Germany, Finland, Australia, Japan, Brazil, most of Central America, and most of the Caribbean. Other countries without eTrace may submit trace requests via Interpol. Commonly, the NTC receives trace requests for firearms recovered in more than 50 countries annually.

**General Disclosure Concerns Under FOIA**

16.     Requests from over 23,000 law enforcement agencies other than ATF in the United States and abroad comprise the bulk of firearms traces conducted by ATF. The remainder of the traces are conducted pursuant to ATF investigations. As of April 25, 2018, the FTS contains the results of 6,876,808 traces of which 5,518,733 originated from state and local law enforcement. In fiscal year 2017, ATF processed more than 408,000 trace requests, the vast majority of which came from other law enforcement agencies.

17.     Federal, state, local, and foreign law enforcement agencies are not required to advise ATF of the status of their investigations. The NTC provides the service of tracing firearms but does not track the status of these investigations. Thus, unless ATF's agents are involved directly in a case, ATF is not informed as to whether the requesting agency has an open criminal case that could be jeopardized by disclosing information pertaining to the firearm trace conducted by ATF. Nor is ATF informed when the requesting agency's criminal investigation has been concluded. A closed trace does not necessarily stay closed. About 40 traces per day are re-opened when subsequent information is developed by law enforcement or ATF to allow the NTC to modify the Firearms Trace Result Reports with additional investigative leads. In addition, the sole value of a Firearms Trace Result is not necessarily limited to the particular investigation in which it is recovered. For example, multiple Firearms Trace Results Reports for firearms recovered in different crimes by different law enforcement agencies over time showing the same purchaser can reveal a firearms trafficker. This accumulation of trace data in conjunction with Multiple Sales for Handguns Reports, FFL Theft/Loss reports and other information is critical to ATF's detection of illegal traffickers. There is no doubt that many of the over 6.8 million

trace results in the FTS relate to open investigations.  For this reason, ATF must be extremely cautious in disclosing law enforcement data from the FTS.

18.  United States government agencies submit trace requests which may be related to issues of national security which could include terrorism as well as the movement of arms abroad.  These requests are very sensitive and are handled in strictest confidence.  Because firearms tracing is voluntary and depends in significant part on the requesting agency's expectation of ATF nondisclosure policy to maintain confidentiality, it is quite apparent that the release of "trace data" could be expected not only to compromise investigative and intelligence operations, or endanger undercover operations, but also to undermine the confidence in the NTC and the entire tracing process.

## Trace Data and Statistics

19.  ATF regularly prepares statistical reports utilizing trace data in the FTS database in order to provide the public and law enforcement agencies with insight into firearms recoveries.  These reports are prepared by ATF's Office of Strategic Intelligence and Information for each state on an annual basis, as well as for certain foreign jurisdictions where firearms were recovered and traced by ATF.  The statistical trace data provided by ATF, including these reports, help domestic and international law enforcement agencies solve firearms crimes, detect firearms trafficking, and identify trends with respect to intrastate, interstate and international movement of crime guns.  Those and other reports prepared by ATF are available on the agency's website at https://www.atf.gov/resource-center/data-statistics.

20.  The statistical reports are prepared and created by experienced specialists in ATF's Violent Crime Analysis Branch (VCAB) who utilize their experience and skills to prepare these reports in an accurate and timely manner.  The data used to prepare each series of reports is extracted from the FTS utilizing time consuming and specialized queries pertinent to each series of reports. Subsequently, all the data is reviewed and analyzed using statistical software overseen by an ATF employee.  Part of the analyzation process involves the specialists interacting with various members of the NTC to ensure the validity and relevancy of the data that was extracted from the FTS.  After the analyzation process has been completed, the resulting statistics are then inserted into applicable software and a visual depiction of the data is created.  Each product is then subjected to a multi-level review process which ensures the accuracy of not only the data but the format in which it is presented.  This is a time consuming process

that requires skill and expertise at interpreting and evaluating trace data to create accurate and responsive publications for public disclosure.

### Data Withheld In Response to Plaintiff's FOIA Request

21. The complaint that is the subject of this litigation concerns a March 23, 2017, FOIA request for certain records related to traces of firearms to law enforcement agencies. ATF produced records in response to the request in three releases, which took place on January 31, February 2, and March 23, 2018.

22. ATF has not released information from the FTS database in response to plaintiff's request for the "[t]otal number of weapons traced back to former law enforcement ownership, annually from 2006 to the present." This is the third category of information sought in the March 23, 2017, FOIA request. ATF has produced records in whole or part (with appropriate redactions) reflecting traces of firearms to law enforcement agencies, where those records existed and could be located after a reasonable search.

23. Plaintiff's request for the "[t]otal number of weapons traced back to former law enforcement ownership, annually from 2006 to the present concerns law enforcement data from ATF's Firearms Trace System database.

24. The Firearms Trace System database contains over 75 tables with a combined total of 800 columns/fields, not including subsystems and integrated or associated systems (like eTrace). The data elements related to firearms trace results in the Firearms Trace System database can be grouped into six general categories: (i) information about the law enforcement agency requesting the trace, such as the agency's name, address, case number, and investigative notes provided by the agency; (ii) information provided by the requesting agency regarding its recovery of the firearm, such as the date and location where the traced firearm was taken into custody by the requesting agency; (iii) information about purchasers of the traced firearm; (iv) information about possessors of the traced firearm and any associates (i.e., persons with the possessor of the firearm when the firearm comes into police custody), such as their names and addresses, driver's license information and social security numbers, and any related vehicle information; (v) information identifying each FFL that has sold the traced firearm; and (vi) information about the traced firearm such as the manufacturer, importer, model, weapon type,

caliber and serial number. In addition to these categories of information, the Firearms Trace System database includes close-out codes for each trace, including those related to law enforcement and government agencies identified above.

25. Running a search on the Firearms Trace System database to determine the annual number of weapons traced back to law enforcement would not be an automatic process, but would require an ATF employee to exercise judgment in selecting the search criteria and further work to refine the results. To my knowledge, that search has not been conducted to date and is not reflected in any existing records at the ATF that could be located after a reasonable search conducted in response to plaintiff's FOIA request.

26. Because generating and presenting accurate statistical data from the Firearms Trace System database is a time-consuming process requiring the efforts of experienced specialists at the ATF, compelling ATF to run searches on the Firearms Trace System database in order to produce aggregate statistical data sought by FOIA requestors would impose an additional and significant burden on the agency and would divert resources currently used to prepare and publish reports of statistical data.

27. Congress has consistently restricted ATF's use of federal funds to disclose part or all of the contents of the Firearms Trace System database. Most recently, pursuant to the Consolidated and Further Continuing Appropriations Act of 2012, Public Law 112–55, Congress prohibited ATF from using federal funds to disclose part or all of the contents of the Firearms Trace System database. That prohibition on the use of federal funds applied during the then-current fiscal year "and in each fiscal year thereafter."

28. That prohibition does not prevent ATF from disclosing certain "statistical information concerning total production, importation, and exportation by each licensed [firearms] importer," nor does it prevent ATF itself from publishing "annual statistical reports" or certain "statistical aggregate data." It is ATF's understanding that the impetus for the proviso to the prohibition on the use of federal funds that permits these disclosures was that Congress intended to permit ATF to continue to publish statistical reports documenting "trends in firearms, commerce and use of federal services in the United States." Further, it is ATF's understanding that this proviso does not permit ATF to use federal funds to create and release new statistical reports or statistical aggregate data in response to FOIA requests or

otherwise disclose the contents of the Firearms Trace System database in response to such requests.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 26th day of April, 2018.

_____
CHARLES J. HOUSER