1  D. Victoria Baranetsky (Cal. Bar No. 311892)
   THE CENTER FOR INVESTIGATIVE
2  REPORTING
   1400 65th St., Suite 200
3  Emeryville, CA 94608
   vbaranetsky@revealnews.org
4  Telephone: (510) 982-2890
5
6  Attorney for Plaintiff
7
8
9                    UNITED STATES DISTRICT COURT
10           FOR THE NORTHERN DISTRICT OF CALIFORNIA
11                      SAN FRANCISCO DIVISION
12  THE CENTER FOR INVESTIGATIVE          )   Case No. 3:17-cv-06557-JSC
    REPORTING,                            )
13                                        )   OPPOSITION TO DEFENDANT'S
                                          )   MOTION FOR SUMMARY JUDGMENT
14                    Plaintiff,          )
                                          )
15      v.                                )   AND
                                          )
16  UNITED STATES DEPARTMENT OF           )   NOTICE OF CROSS MOTION AND
    JUSTICE,                              )   CROSS MOTION FOR SUMMARY
17                                        )   JUDGMENT; MEMORANDUM OF
                      Defendant.          )   POINTS AND AUTHORITIES IN
18                                        )   SUPPORT OF CROSS MOTION FOR
                                          )   SUMMARY JUDGMENT
19                                        )
                                          )
20                                        )   Date:  June 28, 2018, 9:00 a.m.
                                          )   Courtroom: F, 15th Floor
21                                        )              U.S. District Courthouse
                                          )              450 Golden Gate Avenue
22                                        )              San Francisco, California
                                          )   Judge: Hon. Jacqueline S. Corley
23                                        )
                                          )
24                                        )
25  _____
26
27
28
                                   - i -

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................................iii

NOTICE OF MOTION AND MOTION ........................................................................vii

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

I.   INTRODUCTION................................................................................................1

II.  STATEMENT OF FACTS ...................................................................................2

    A.   ATF's History of Releasing Trace Data and the Tiahrt Exceptions For Release of Certain Trace Data.............................................................................................2

    B.   ATF Continues to Release Aggregate Trace Data In Compliance With The Tiahrt Amendment ...........................................................................................................5

    C.   The Public Has an Interest in Knowing Aggregate Trace Data......................6

    D.   The Twin Concerns Under the Tiahrt Amendment Will Not Be Disturbed by the Release of Aggregate Trace Data And Law Enforcement Communications ................7

    E.   CIR's Freedom of Information Act Request .................................................9

III. ARGUMENT.....................................................................................................10

    A.   The Freedom Of Information Act and the Standard of Review....................10

    B.   CIR is Entitled to Summary Judgment Because the Government Has Improperly Withheld Agency Records ..............................................................................12

        1.   The Government Has Failed to Perform an Adequate Search for Records Responsive to CIR's FOIA Request ....................................................12

        2.   The Government Has Improperly Withheld Agency Records Under Exemption 3 .....................................................................................................14

        3.   The Government Has Failed to Show That Releasing Aggregate Trace Data Would Require the Agency to Produce New Documents.......................22

        4.   The Government Has Officially Acknowledged Information Withheld Under All Claimed Exemptions ..................................................................24

IV. CONCLUSION..................................................................................................24

# TABLE OF AUTHORITIES

## CASES

*ACLU v. CIA*, 892 F. Supp. 2d 234 (D.D.C. 2012) .................................................................. 17

*ACLU Found. of Ariz. v. U.S. Dep't of Homeland Sec.*, No. CV-14-02052, 2017 U.S. Dist. LEXIS 11610 (D. Ariz. Jan. 27, 2017) ............................................................................................ 24

*ACLU of N. Cal. v. U.S. Dep't of Justice*, 880 F.3d 471 (2018) ............................................. 24

*Abdeljabbar v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 74 F. Supp. 3d 158 (D.D.C. 2014) .......................................................................................................................... 18, 19

*Ancient Coin Collectors Guild v. United States Dep't of State*, 641 F.3d 504 (D.C. Cir. 2011) .. 12

*Animal Legal Defense Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016) .......... 11

*Audubon Soc'y of Portland v. U.S. Natural Res. Conservation Serv.*, 841 F. Supp. 2d 1182 (D. Or. 2012) .................................................................................................................................... 17

*Bothwell v. CIA*, No. 13-cv-05439, 2014 U.S. Dist. LEXIS 144151 (N.D. Cal. Oct. 9, 2014) .... 24

*Carlson v. U.S. Postal Serv.*, 504 F.3d 1123 (9th Cir. 2007) ............................................. 15, 19

*Caruso v. ATF*, No. C15-1990-JCC, 2011 WL 669132 (D. Or. Feb. 16, 2011), *rev'd on other grounds* 495 Fed. Appx. 776 (9th Cir. 2012) ............................................................................ 18, 19

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).......................................................................... 11

*Church of Scientology v. U.S. Dep't of Army*, 611 F.2d 738 (9th Cir. 1980) ............................. 12

*Citizens Comm'n on Human Rights v. Food & Drug Admin.*, 45 F.3d 1325 (9th Cir. 1995)......... 12

*City of Chi. v. U.S. Dep't. of Treasury, Bureau of Alcohol, Tobacco, and Firearms*, 423 F. 3d 777 (7th Cir. 2005) ........................................................................................................................... 4

*City of New York v. Beretta U.S.A. Corp.*, 429 F. Supp. 2d 517 (E.D.N.Y. 2006) .................. 5, 15

*Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285 (9th Cir. 1987) ............................................... 11

*Elec. Frontier Found. v. Nat'l Sec. Agency*, No. 14-cv-03010-RS, 2016 WL 1059389 (N.D. Cal. March 18, 2016) ........................................................................................................................ 24

*Everytown For Gun Safety Support Fund v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, No. 1:18-cv-02296 (S.D.N.Y filed March 15, 2018) ............................................... 16

*Fitzgibbon v. CIA*, 911 F.2d 755 (D.C. Cir. 1990) .................................................................... 24

*Fowlkes v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 67 F. Supp. 3d 290 (D.D.C. 2014) *overruled by* 139 F. Supp. 3d 287 (D.D.C. 2015) ............................................................ 17

*Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759 (9th Cir. 2015) .................................... 10, 11, 13

*Henry v. U.S. Dep't of Justice*, No. C-13-05924 DMR, 2015 U.S. Dist. LEXIS 117311 (N.D. Cal. September 1, 2015)...................................................................................................................... 24

*Hiken v. U.S. Dep't of Defense*, 521 F. Supp. 2d 1047 (N.D. Cal. 2007)................................... 14

*Hunt v. CIA*, 981 F.2d 1116 (9th Cir. 1992)................................................................. 15, 19, 21

*Kamman v. IRS*, 56 F.3d 46 (9th Cir. 1995)............................................................................... 12

-iii -

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

*Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964 (9th Cir. 2009) ...................................... 10, 13, 14

*Long v. IRS*, 742 F.2d 1173 (9th Cir. 1984) ...................................................................... 16

*Long v. U.S. Dep't of Justice*, 450 F. Supp. 2d 42 (D.D.C. 2006) ............................... 23

*Minier v. CIA*, 88 F.3d 796 (9th Cir. 1992) ............................................... 15, 16, 19, 20

*Muhammad v. U.S. Dep't of Justice*, No. 2:09-1255, 2007 WL 433552 (S.D. Ala. Feb. 6, 2007). 7

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978) ..................................... 10, 11

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) ............................................ 22

*Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114 (9th Cir. 1988) .................. 11

*Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233 (D.D.C. 2012) ............................ 23

*Nat'l Shooting Sports Foundation, Inc. v. Melson*, No. 11-cv-01401 (D.D.C. Sept. 12, 2011) 6, 22

*Oglesby v. U.S. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990) ................................... 12

*Reep v. U.S. Dep't of Justice*, No. 16-cv-1275-RCL, 2018 WL 1461902 (D.D.C. March 23, 2018) ................................................................................................................. 5

*Ron Peterson Firearms, LLC v. Jones*, No. 11-cv-00678-JEC-LFG (D.N.M. Mar 30, 2012) . 5, 22

*Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803 (9th Cir. 1995) ............................... 19

*Ring Precision, Inc., et al. v. Jones*, No. 11-cv-00663-HLH (W.D. Tex. March 26, 2012) ..... 6, 22

*Smith v. ATF*, No. 13–13079, 2014 WL 3565634 (E.D. Mich. July 18, 2014) ..................... 17, 18

*Steinberg v. Dep't of Justice*, 23 F.3d 548 (D.C. Cir. 1994) ................................... 13

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989) .................................................................................................. 10-12, 16, 18

*Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321 (D.C. Cir. 1999) ...................... 13

*Watkins v. ATF*, No. 04-800, 2005 WL 2334277 (D.D.C. Sept. 1, 2005) ....................... 7

*Yeager v. DEA*, 1 Gov't Disclosure Serv. (P-H) ¶ 80,283 (D.D.C. 1980), *aff'd*, 678 F.2d 315 (D.C. Cir. 1982) .............................................................................................. 13

*Zemansky v. EPA*, 767 F.2d 569 (9th Cir. 1985) .................................................. 12

**STATUTES**

5 U.S.C. § 552 ..................................................................................................... *passim*

Consolidated Appropriations Act, 2005, Pub. L. No. 108– 447, 118 Stat. 2809 ...................... 3, 7

Consolidated Appropriations Act, 2008, Pub. L. No. 110–161, 121 Stat. 1844 .................. 3, 8, 19

Consolidated Appropriations Act, 2010, Pub. L. No. 111–117, 123 Stat. 303 ............................ 3

Consolidated Appropriations Act of 2012, Pub. L. No. 112–155, 125 Stat. 552 ......... 1, 15, 19, 21

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

## OTHER AUTHORITIES

ATF, *Fact Sheet – eTrace: Internet-Based Firearms Tracing and Analysis* (March 2016), *available at* https://bit.ly/2LoxMvF ...........................................................................................................5

ATF, Press Release, *ATF Releases 2016 U.S. Firearms Trace Data Report*, Sept. 29, 2017 https://bit.ly/2KOkdVr ......................................................................................................................5

ATF, *Who We Are, available at* https://bit.ly/2mOw4tr ............................................................2, 9

*America's Gun Culture In 10 Charts*, BBC.COM, Nov. 6, 2017, https://bbc.in/2kkm6ka .............6

Annie Linskey, *NRA Has Long History of Suppressing Data On Gun Violence*, BOSTON GLOBE, Mar. 25, 2018, https://bit.ly/2IY1B52 ..............................................................................................6

Christina Jewett, *New California Law Could Keep Guns Away From People Like Omar Mateen*, REVEAL, June 15, 2016, https://bit.ly/2x4I80S ...................................................................................6

City of Chi., *Gun Trace Report* (2017), *available at* https://bit.ly/2yYMtjq .................................5

Dan Friedman, *How the Government Makes Gun Records Impossible to Trace*, VICE, Sept. 6, 2016, https://bit.ly/2xXcW2t ...................................................................................................................6, 8

David Olinger, *Police Guns In The Hands Of Criminals*, THE DENVER POST, Sept. 20, 1999, https://dpo.st/2s1kdKP ......................................................................................................................2

Erica Good & Sheryl Gay Stolberg, *Legal Curbs Said to Hamper ATF in Gun Inquiries*, N.Y. TIMES, Dec. 12, 2012, https://nyti.ms/2s0V1nr ....................................................................................3

Greg Moran & Lyndsay Winkley, *ATF Warns Southern California Law Enforcement Officers May Be Illegally Selling Guns*, SAN DIEGO UNION-TRIBUNE, Apr. 12, 2017, https://bit.ly/2ouZuxw7, 14

H.R. Rep. No. 576, 108th Cong., 2d Sess. (2004) ...........................................................................7

H.R. Rep. No. 104-79, 104th Cong., 1st Sess. (1995) ...................................................................23

*Hearing on Restrictions Imposed on the Bureau of Alcohol, Tobacco, Firearms and Explosives Concerning the Release of Crime Gun Trace Data*, 110th Cong. 413 (2007) ...............................8

James V. Grimaldi & Sari Horowitz, *Industry Pressure Hides Gun Traces, Protects Dealers From Public Scrutiny*, WASH. POST, Oct. 24, 2010, https://wapo.st/WDiqts ..........................................3

Jessica Chasmar, *Seattle To Destroy $30K In Used Police Guns So They Don't Get 'Into The Wrong Hands'*, THE WASH. TIMES, June 30, 2016, https://bit.ly/2LoNjMa ....................................7

John Diedrich, *Wiped Clean*, MILWAUKEE JOURNAL SENTINEL, Jan. 3, 2010, https://bit.ly/2kfY4nz ..........................................................................................................................................................2

John Diedrich & Ben Poston, *Ineffective Rules Let Gun Stores Endure*, MILWAUKEE JOURNAL SENTINEL, Dec. 15, 2010, https://bit.ly/2IGKS5Z ..............................................................................3

Max Fisher & Josh Keller, *What Explains U.S. Mass Shootings. International Comparisons Suggest An Answer*, N.Y. TIMES, Nov. 7, 2017, https://nyti.ms/2iEcCMq ........................................6

Office of Attorney Gen. N.Y., *Target on Trafficking: New York Crime Gun Analysis* (Oct. 24, 2016), *available at* https://on.ny.gov/2GIAiJA ...............................................................................5

Office of Inspector Gen., *Audit of the Bureau of Alcohol, Tobacco, Firearms and Explosives Controls Over Weapons, Munitions, and Explosives* (2018), *available at* https://bit.ly/2x6nBZC 6

-v-

OPP. TO DEF'S MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

Scott Glover, Scott Bronstein & Drew Griffin, *Cop Convicted Of Illegal Gun Dealing Sold Weapon Used in Murder*, CNN.COM, May 2, 2018, https://cnn.it/2jlIeHI..................................................7

William J. Krouse, *Gun Control: Statutory Disclosure Limitations on ATF Firearms Trace Data and Multiple Handgun Sales Reports*, May 27, 2009, https://bit.ly/1WKHeZJ ........................2, 3

# NOTICE OF MOTION AND MOTION

TO DEFENDANT AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 28, 2018 at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom F on the 15th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, in front of the Honorable Jacqueline Scott Corley presiding, the plaintiff The Center for Investigative Reporting ("CIR") will, and hereby does, cross move the Court for an order granting for summary judgment in plaintiff's favor.

Pursuant to Federal Rule of Civil Procedure 56, CIR respectfully asks that this Court issue an order requiring the government to release all records, including any necessary redactions, improperly withheld from the public under the Freedom of Information Act ("FOIA") and which is explicitly allowed under the relevant statute defendant cites for exemption pursuant to 5. U.S.C. § 552(b)(3). This cross motion is based on this notice of cross motion and motion, the memorandum of points and authorities in support of this cross motion, the Declaration of D. Victoria Baranetsky and attached exhibits, all papers and records on file with the Clerk or which may be submitted prior to or at the time of the hearing, and any further evidence which may be offered.

-vii -
Opp. to Def's Mot. Summ. J.; Not. of Cross Mot. and Cross Mot.
Summ. J.; Mem. in Supp. of Cross Mot. Summ. J.

**RELIEF SOUGHT BY PLAINTIFF**

Plaintiff seeks an order summarily dismissing defendant's claims and granting all claims in favor of plaintiff.

**ISSUES TO BE DETERMINED**

Whether plaintiff is entitled to summary adjudication of defendant's FOIA claims in its favor.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

This is an action under the Freedom of Information Act, 5 U.S.C. § 552, seeking the United States Department of Justice ("DOJ"), Bureau of Alcohol, Tobacco, Firearms and Explosives Security ("ATF") to disclose records related to ATF's Firearm Trace System database – an electronic database which tracks firearms in the United States.  The requested records include existing aggregate data on firearms originating from local police departments as well as copies of communications from ATF to local law enforcement about trace records.  The Justice Department has moved for summary judgment, asking the Court to approve its decision to withhold the requested material pursuant to 5 U.S.C. § 552(b)(3) and the Consolidated Appropriations Act of 2012, Pub. L. No. 112–155, 125 Stat. 552 ("2012 Appropriations Act").

While the DOJ relies on the 2012 Appropriations Act to justify withholding the requested data, the agency largely ignores the fact that this same rider contains three exceptions which allow for the disclosure of the requested records.  *See* Gov. Br. at 1-11.  While the scope of these exceptions is a novel issue, it is a simple one.  According to the ordinary rules of statutory interpretation, this court is well-positioned to rule in CIR's favor, as the requested records fall squarely within the plain meaning of the exceptions of the 2012 Appropriations Act.  Moreover, the rider does not explicitly refer to the Open FOIA Act of 2009, and is therefore insufficient to justify withholding documents under FOIA.

Thus, because the DOJ has failed to meet its burden and show 5 U.S.C. § 552(b)(3) applies, this Court should deny the government's motion for summary judgment and grant CIR's cross motion for summary judgment.  CIR respectfully requests entry of an order compelling the DOJ to disclose the improperly withheld record.

## II.     STATEMENT OF FACTS

### A.     ATF's History of Releasing Trace Data and the Tiahrt Exceptions For Release of Certain Trace Data

ATF, charged with protecting the public from gun violence, has long recognized the importance of collecting and disclosing firearm data.  ATF, *Who We Are*, *available at* https://bit.ly/2mOw4tr (Baranetsky Decl., Ex. 1).  Since the 1990s, ATF has maintained "the Firearm Trace System database, which is a massive electronic database that serves to support criminal investigations by federal, state, local, and foreign law enforcement agencies." *See* Declaration of Charles J. Houser ("Houser Decl.") ¶ 8; *see also* William J. Krouse, *Gun Control: Statutory Disclosure Limitations on ATF Firearms Trace Data and Multiple Handgun Sales Reports* 2, May 27, 2009, https://bit.ly/1WKHeZJ (Baranetsky Decl., Ex. 2).  By collecting this so-called "trace data" which catalogues the manufacturer, model, caliber, and serial number as well as where and to whom the firearm was last transferred, investigators are able to carry out their trace functions. *Id.*

Prior to 2003, ATF also released individual and aggregate trace data to the public.  *See, e.g.*, David Olinger, *Police Guns In The Hands Of Criminals*, THE DENVER POST, Sept. 20, 1999, https://dpo.st/2s1kdKP (Baranetsky Decl., Ex. 3) (analyzing "thousands of ATF firearms tracing records from 1994 through 1998").  Publishing this data allowed reporters to routinely inform the public about important trends involving gun violence and address any related public concerns. *See, e.g.*, John Diedrich, *Wiped Clean*, MILWAUKEE JOURNAL SENTINEL, Jan. 3, 2010,

https://bit.ly/2kfY4nz (Baranetsky Decl., Ex. 4) (reporting on errant gun seller based on ATF's trace records obtained through FOIA); John Diedrich & Ben Poston, *Ineffective Rules Let Gun Stores Endure*, MILWAUKEE JOURNAL SENTINEL, Dec. 15, 2010, https://bit.ly/2IGKS5Z (Baranetsky Decl., Ex. 5).

In 2003, Congress included in the Consolidated Appropriations Act, a rider that prohibited ATF from disclosing *individual* firearm trace data and sales reports data for any purpose other than a law enforcement investigation or agency licensing in order to protect the privacy of individuals and law enforcement investigations. *See* Gov. Br. at 4; Houser Decl. ¶ 27; *see also* Krouse, *supra*. As a result, this rider, commonly known as the Tiahrt Amendment (named after its sponsor, former U.S. Representative Todd Tiahrt (R-Kan.)) made individual trace data secret. *See* James V. Grimaldi & Sari Horowitz, *Industry Pressure Hides Gun Traces, Protects Dealers From Public Scrutiny*, WASH. POST, Oct. 24, 2010, https://wapo.st/WDiqts (Baranetsky Decl., Ex. 6).

Despite the general restriction of the Tiahrt Amendment, the law enumerates three exceptions. In 2008 Congress modified the language of the rider to explicitly permit ATF to release certain trace information, including aggregate trace data.[1] Consolidated Appropriations Act, 2008, Pub. L. No. 110–161, 121 Stat. 1844, 1903-04 ("2008 Appropriations Act"); *see also* Baranetsky Decl., Ex. 2 at 1. Congress upheld this interpretation in subsequent versions of the Tiahrt Amendment. *See* Consolidated Appropriations Act, 2010, Pub. L. No. 111–117, 123 Stat. 3034, 3128-29; *see also* Erica Good & Sheryl Gay Stolberg, *Legal Curbs Said to Hamper ATF in Gun Inquiries*, N.Y. TIMES, Dec. 12, 2012, https://nyti.ms/2s0V1nr (Baranetsky Decl., Ex. 7) (stating "under the most recent Tiahrt amendment, adopted in 2010, the A.T.F. still cannot release anything but aggregate data to the public").

---

[1] The language of the statute never explicitly prohibited ATF from releasing statistical or aggregate trace data, *see, e.g.*, Consolidated Appropriations Act, 2005, Pub. L. No. 108– 447, 118 Stat. 2809, 2859–60 ("2005 Appropriations Act"), but the 2008 version clarified that exception.

-3-

While the Tiahrt Amendment clearly states, "no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives" the rider makes an exception for three categories that "shall not" be prevented from release: (A) statistical information concerning total production, importation, and exportation of firearms; (B) information exchanged between various law enforcement agencies; or (C) statistical reports *or statistical aggregate data regarding firearms* ("Tiahrt exceptions").  125 Stat. 552, 609-610.  More specifically, it states:

> That, during the current fiscal year and in each fiscal year thereafter, no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives ....***except that this proviso shall not be construed to prevent***: (A) the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer (as defined in section 921(a)(9) of such title) and licensed manufacturer (as defined in section 921(1)(10) of such title); (B) the sharing or exchange of such information among and between Federal, State, local, or foreign law enforcement agencies, Federal, State, or local prosecutors, and Federal national security, intelligence, or counterterrorism officials; or (C) the publication of annual statistical reports on products regulated by the Bureau of Alcohol, Tobacco, Firearms and Explosives, including total production, importation, and exportation by each licensed importer (as so defined) and licensed manufacturer (as so defined), ***or statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations***

125 Stat. 552, 609-610 (emphasis added).

Defendant fails include this key language in its initial discussion of the Tiahrt Amendment, *Compare* Gov. Br. at 4 *with* Gov. Br. at 11, and take proper account of its impact.   While the government accurately states that various courts have repeatedly relied on the first part of the rider to hold that *individual* trace data is exempt from disclosure pursuant to FOIA, no court has interpreted the meaning or scope of the Tiahrt exceptions, including exceptions (C) and (B).  *Cf.* Gov. Br. at 5 (citing *City of Chi. v. U.S. Dept. of Treasury, Bureau of Alcohol, Tobacco, and Firearms*, 423 F. 3d 777, 781–82 (7th Cir. 2005) (involving release of *individual* trace data subsequent to the passage of

-4-

the Tiahrt Amendment); *Reep v. U.S. Dep't of Justice*, No. 16-cv-1275-RCL, 2018 WL 1461902, at *4-5 (D.D.C. March 23, 2018) (same).   Thus, this is a case of first impression and statutory interpretation, which requires this court to look at the plain meaning of the statute and clearly permits disclosure of the requested information.   *City of New York v. Beretta U.S.A. Corp.*, 429 F. Supp. 2d 517, 524 (E.D.N.Y. 2006) (interpreting the Tiahrt Amendment narrowly).

> **B.      ATF Continues to Release Aggregate Trace Data In Compliance With The Tiahrt Amendment**

In compliance with the Tiahrt exceptions, ATF has continually released aggregate trace data and reports containing statistical data.   *See, e.g.*, ATF, Press Release, *ATF Releases 2016 U.S. Firearms Trace Data Report*, Sept. 29, 2017, https://bit.ly/2KOkdVr (Baranetsky Decl., Ex. 8). ATF also routinely institutes trace-data agreements with local law enforcement that are consistent with this exception.   ATF, *Fact Sheet – eTrace: Internet-Based Firearms Tracing and Analysis* (March 2016), *available at* https://bit.ly/2LoxMvF (Baranetsky Decl., Ex. 9).

While the agreements prohibit local law enforcement from publishing *individual* trace records, the reports may include *aggregate* trace information.   For instance, the City of Chicago has routinely published reports containing aggregate data of gun crimes, but not individual trace information.   City of Chi., *Gun Trace Report* (2017), *available at* https://bit.ly/2yYMtjq (Baranetsky Decl., Ex. 10).   ATF officials were also quoted for explicitly telling the New York Attorney General to use trace data "to produce public aggregate statistical reports similar to those published by ATF."   Office of Attorney Gen. of N.Y., *Target on Trafficking: New York Crime Gun Analysis*, 36 (Oct. 24, 2016), *available at* https://on.ny.gov/2GIAiJA (Baranetsky Decl., Ex. 11).

Moreover, and more importantly, ATF has - on its own - interpreted Tiahrt exception (C) to justify disclosure of aggregate trace data to members of the public outside of the confines of a report.   *See* Defendant's Brief in Opposition to Plaintiff's Motion to Supplement the Administrative Record at 5, n.2, *Ron Peterson Firearms, LLC v. Jones*, No. 11-cv-00678-JEC-LFG

-5-

(D.N.M. Mar 30, 2012) (ECF 43) (Baranetsky Decl., Ex. 12) (arguing that ATF could disclose

trace data that "constitutes 'statistical aggregate data" because it is "permitted by the statute");

Defendant's Brief in Opposition to Intervenor Plaintiff's Motion to Supplement the Administrative

Record at 5, n.2, 10 *Ring Precision, Inc., et al. v. Jones*, No. 11-cv-00663-HLH (W.D. Tex. March

26, 2012) (ECF 42) (Baranetsky Decl., Ex. 13) (same); ATF Administrative Record 0388-0696,

*Nat'l Shooting Sports Foundation, Inc. v. Melson*, No. 11-cv-01401 (D.D.C. Sept. 12, 2011) (ECF

22-6) (Baranetsky Decl., Ex. 14) (same).

### C.   The Public Has an Interest in Knowing Aggregate Trace Data

In the past few years and months, in particular, gun violence has spiked national attention.

Following the mass shootings in Sandy Hook and Orlando, and the even more recent massacres in

Las Vegas, Chicago, Texas, and Florida there has been extensive reporting by local, national, and

international news outlets on firearm use in the United States. *See, e.g.*, Christina Jewett, *New*

*California Law Could Keep Guns Away From People Like Omar Mateen*, REVEAL, June 15, 2016,

https://bit.ly/2x4I80S (Baranetsky Decl., Ex. 15); *America's Gun Culture In 10 Charts*, BBC.COM,

Nov. 6, 2017, https://bbc.in/2kkm6ka (Baranetsky Decl., Ex. 16); Max Fisher & Josh Keller, *What*

*Explains U.S. Mass Shootings. International Comparisons Suggest An Answer*, N.Y. TIMES, Nov.

7, 2017, https://nyti.ms/2iEcCMq (Baranetsky Decl., Ex. 17).

These circumstances have led to a heightened public interest in disclosure of trace data.

*See, e.g.*, Dan Friedman, *How the Government Makes Gun Records Impossible to Trace*, VICE,

Sept. 6, 2016, https://bit.ly/2xXcW2t (Baranetsky Decl., Ex. 18); Annie Linskey, *NRA Has Long*

*History of Suppressing Data On Gun Violence*, BOSTON GLOBE, Mar. 25, 2018,

https://bit.ly/2IY1B52 (Baranetsky Decl., Ex. 19).  It has also spurred investigations by the

government and news media into former law enforcement weapons being used in gun crimes. *See,*

*e.g.*, Office of Inspector Gen., *Executive Summary, Audit of the Bureau of Alcohol, Tobacco,*

*Firearms and Explosives Controls Over Weapons, Munitions, and Explosives* (2018), *available at* https://bit.ly/2x6nBZC (Baranetsky Decl., Ex. 20); Jessica Chasmar, *Seattle To Destroy $30K In Used Police Guns So They Don't Get 'Into The Wrong Hands'*, THE WASH. TIMES, June 30, 2016, https://bit.ly/2LoNjMa (Baranetsky Decl., Ex. 21); Greg Moran & Lyndsay Winkley, *ATF Warns Southern California Law Enforcement Officers May Be Illegally Selling Guns*, SAN DIEGO UNION-TRIBUNE, April 12, 2017, https://bit.ly/2ouZuxw (Baranetsky Decl., Ex. 22); Scott Glover, Scott Bronstein & Drew Griffin, *Cop Convicted Of Illegal Gun Dealing Sold Weapon Used in Murder*, CNN.COM, May 2, 2018, https://cnn.it/2jIIeHI (Baranetsky Decl., Ex. 23).

Release of the requested information, including aggregate trace data would inform the public on this increasingly urgent topic of public concern as well satisfy the well-documented.

**D.      The Twin Concerns Under the Tiahrt Amendment Will Not Be Disturbed by the Release of Aggregate Trace Data And Law Enforcement Communications**

Disclosure of aggregate trace data and other requested records is in accordance with the Tiahrt Amendment, preserves Congress's intentions, and promotes the agency's aegis to protect the public.

Congress passed the Tiahrt Amendment and prohibited individual trace records from being released in order to address two chief concerns over disclosure: invasions of privacy stemming from identifiable trace records and obstruction of law enforcement investigations into crimes. *See Muhammad v. U.S. Dep't of Justice*, No. 2:09-1255, 2007 WL 433552, at *2 (S.D. Ala. Feb. 6, 2007) (citing H.R. Rep. No. 576, 108th Cong., 2d Sess. (2004) (House Report to the 2005 Appropriations Act)); *see also Watkins v. ATF*, No. 04-800, 2005 WL 2334277, at *1 (D.D.C. Sept. 1, 2005) (concluding that with the 2005 Appropriations Act Congress "sought to prevent the public release of sensitive firearms trace data not so much for budgetary reasons than out of concern that such disclosures could jeopardize criminal investigations").

Release of the *aggregate* trace data does not disturb these twin aims because it masks the identity of individuals and private gun manufacturers and similarly is unable to identify specific law enforcement investigations.  As stated in a hearing before the House of Representatives in 2007 on the passage of the 2008 Appropriations Act:

> There is no reason to believe that the reports issued by ATF containing [aggregate] crime gun trace data have compromised a single law enforcement investigation. Likewise, there is no evidence that the studies and reports based on ATF crime gun trace data previously published by scholars, advocacy groups, the media and other government agencies have revealed confidential information ATF sources or adversely affected law enforcement activities.

*Hearing on Restrictions Imposed on the Bureau of Alcohol, Tobacco, Firearms and Explosives Concerning the Release of Crime Gun Trace Data*, 110th Cong. 413 (2007) (statement of Josh Horwitz, Executive Director of the Coalition to Stop Gun Violence) (Baranetsky Decl., Ex. 24).

Legislative history suggests that releasing aggregate trace data would align with Congress' intention to enable academics, the public, and law enforcement to access trace data.  A statement made before the House of Representatives, in 2007, in support of the 2008 Tiahrt exceptions, said that release of aggregate data was necessary because withholding trace records "depriv[ed] the public along with government and law enforcement officials, of valuable information about guns and crime." *Hearing on Restrictions Imposed on the ATF, supra* (statement of Paul Helmke, then-President of the Brady Center to Prevent Gun Violence) (Baranetsky Decl., Ex. 25).  Similarly, another statement asserted that reports containing aggregate information "provided [the public] a wealth of valuable data." (Baranetsky Decl., Ex. 24).  Subsequent to these statements before the House, Congress passed the 2008 Appropriations Act containing the Tiahrt exceptions.  Release of records would address the various assertions that public disclosure would benefit the public today. *See generally* Baranetsky Decl., Ex. 18 and 19.

Additionally, the disclosure would be in compliance with the ATF's mission.  "The mission of ATF is to protect communities from violent criminals, criminal organizations, the illegal use and

-8-

trafficking of firearms, the illegal use and storage of explosives, acts of arson and bombings, acts

of terrorism, and the illegal diversion of alcohol and tobacco products." Baranetsky Decl., Ex. 1.

### E.    CIR's Freedom of Information Act Request

On March 23, 2017 Mr. Alain Stephens, on behalf of CIR, submitted a FOIA request to

ATF (hereinafter "the Request") seeking trace information not prohibited from release under the

Tiahrt Amendment.  More specifically, the Request sought:

> 1.    The National Tracing Center's internal completion codes for law enforcement weapons, current or former.
> 2.    Any and all memos, communications, reports, and other to documents related to E-Trace matches of current or former law enforcement weapons, from 2006 to the present.
> 3.    Total number of weapons traced back to former law enforcement ownership, annually from 2006 to the present.
> 4.    Copies of any and all communications notifying law enforcement agencies when their current or former weapons have entered or been involved in an E-Trace.
> 5.    Copies of policies and guidance dictating how the agency handles law enforcement weapons in E-Trace.

ECF 1-1 at 2.  CIR asked that the processing of the Request be expedited pursuant to 5 U.S.C. §

552(a)(6)(E)(v)(II) and 28 C.F.R. § 16.5(d)(1)(iv) because disclosure of the requested documents is

in the public interest.  ECF 1-1 at 3.  CIR also sought a fee waiver, pursuant to 5 U.S.C. §

552(a)(4)(A)(ii) and (iii); 28 C.F.R. § 16.5(d)(1)(iv), as CIR is a representative of the news media.

ECF 1-1 at 3.

CIR sent an email to ATF on May 24, 2017 to confirm receipt of the Request.  ECF 1-2 at

2.  On May 26, 2017 ATF responded by letter stating that due to an "administrative oversight"

ATF had "not opened [the Request] as a FOIA/Privacy Act request" but acknowledged the request.

ECF 1-3 at 2.  For the following six months, CIR contacted ATF but received no determination,

despite concerted efforts to narrow the request.  ECF 1 at 8.  Having exhausted all administrative

remedies, CIR filed suit on November 13, 2017 seeking the immediate processing and release of all

records responsive to its FOIA request.  ECF 1.

ATF then processed the request, providing interim responses to CIR on January 31 and February 2, 2018, which included disclosure of partial aggregate trace data.  Houser Decl. ¶¶ 21-22 (stating ATF produced firearm trace data "with appropriate redactions").[2]  Houser Decl. ¶¶ 21-22. Even though defendant produced some form of aggregate trace data, defendant claimed that according to the statutory prohibition on release of trace data, defendant was unable to search the ATF database and release aggregate data with appropriate redactions.  *See id.* ¶¶ 22-27.  Defendant also stated that it was unable to locate any materials as to the fourth category, including communications between law enforcement about trace records.  Upon reviewing the released documents and the explanations for their withholdings, CIR has decided not to challenge any redactions in the productions.  However, CIR does assert that ATF did not sufficiently search for the records listed in the third and fourth categories and improperly withheld the requested records requested.  By stipulation dated March 29, 2018, the parties agreed to submit their dispute regarding this issue to the Court for resolution.  ECF 24.

## III.     ARGUMENT

### A.     The Freedom Of Information Act and the Standard of Review

The Freedom of Information Act safeguards the American public's right to know "what their Government is up to."  *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989).  It recognizes that "an informed citizenry [is] vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *see also Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 769–70 (9th Cir. 2015).  To that end, the statute "was enacted to facilitate public access to government documents," *Lahr v. Nat'l Transp. Safety Bd.*, 569

---

[2] The disclosed records containing aggregate trace data discussed here are at Baranetsky Decl. Ex. 26.

F.3d 964, 973 (9th Cir. 2009), "by establish[ing] a judicially enforceable right to secure [government] information from possibly unwilling official hands." *Hamdan*, 797 F.3d at 70 (internal quotation marks and citations omitted). "Official information that sheds light on an agency's performance of its statutory duties falls squarely within [the] statutory purpose." *Reporters Comm.*, 489 U.S. at 773.

Thus, FOIA requires federal agencies to disclose public information upon a citizen's request unless the information falls within nine enumerated exemptions from disclosure identified at 5 U.S.C. § 552(b). *Hamdan*, 797 F.3d at 70. If requested records do not fall into one of these categories, the law requires federal agencies to release them to the public. *Robbins Tire & Rubber*, 437 U.S. at 221; *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1116 (9th Cir. 1988). Moreover, even where an exemption applies, FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b).

"Most FOIA cases are resolved by the district court on summary judgment, with the district court entering judgment as a matter of law." *Animal Legal Defense Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 989 (9th Cir. 2016) (adopting a *de novo* standard of review for summary judgment decisions in FOIA cases) (citation omitted). Summary judgment is appropriate when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288–89 (9th Cir. 1987).

The government bears the burden of proving that a particular document is exempt from disclosure.  5 U.S.C. § 552(a)(4)(B); *Reporters Comm.*, 489 U.S. at 755.  A court considers the government's withholding of agency records *de novo*, and may review documents *in camera* to determine whether exemptions have been properly asserted.  5 U.S.C. § 552(a)(4)(B).  An agency may submit affidavits to satisfy its burden, but "may not rely upon conclusory and generalized allegations of exemptions." *Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995) (quoting *Church of Scientology v. U.S. Dep't of Army*, 611 F.2d 738, 742 (9th Cir. 1980) (quotation marks omitted)).

### B. CIR is Entitled to Summary Judgment Because the Government Has Improperly Withheld Agency Records

The government has failed to satisfy its burden of proving that it has conducted an adequate search and withheld records appropriately pursuant to 5 U.S.C. § 552(a)(3).  Instead, it asserts that CIR requests ATF to produce new documents by conducting a search of its database, but that argument fails according to well-established caselaw.  For these reasons, the Court should deny the government's motion for summary judgment and grant CIR's cross motion for summary judgment, requiring DOJ to release all material it has improperly withheld under the FOIA.

### 1. The Government Has Failed to Perform an Adequate Search for Records Responsive to CIR's FOIA Request

FOIA requires an agency responding to a request to "demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985); *see* 5 U.S.C. § 552(a)(3)(C).  The adequacy of the agency's search is "judged by a standard of reasonableness." *Citizens Comm'n on Human Rights v. Food & Drug Admin.*, 45 F.3d 1325, 1328 (9th Cir. 1995).  While there is "no requirement that an agency search every record system," the agency must conduct a good faith search of those systems likely to possess requested records. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *see also Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) ("An

agency is required to perform more than a perfunctory search…"). To that end, the responding agency typically submits affidavits that describe the scope and methods employed; these showings must be "'reasonably detailed, nonconclusory affidavits submitted in good faith.'" *Lahr*, 569 F.3d at 986 (quoting *Zemansky*, 767 F.2d at 571). The Houser Declaration shows that ATF failed to perform a search, let alone an adequately reasonable one. *See* Houser Decl. ¶¶ 25-26.

First, the Houser Declaration plainly admits the methods were insufficient, as it failed to conduct even a perfunctory search of ATF's firearms database. Houser Decl. ¶¶ 25-26 (stating "that search has not been conducted" because "it would not be an automatic process" and "is a time consuming process"). While a perfect search is not required, a requester is, at a minimum, statutorily entitled to a reasonable one. *Cf. Hamdan*, 797 F.3d at 772 ("the Plaintiffs were entitled to a reasonable search for records, not a perfect one. *And a reasonable search is what they got*") (emphasis added). Moreover, courts find that agency's failure "to describe in any detail what records were searched, by whom, and through what process[]" is fatal to its request for summary judgment. *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994).

Second, ATF explains that it did not search the ATF database because the process is too laborious, Houser Decl. ¶¶ 25, 26, but that reasoning is legally unjustified. *See Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999) (where "an agency has reason to know that certain places might well contain responsive documents," it is required under FOIA to search those places). And while an agency may be excused from searching if the method is unduly burdensome, courts have long observed that "processing" by computer can be "relatively simple," especially if a program can be devised to accomplish it. *See, e.g., Yeager v. DEA*, 1 Gov't Disclosure Serv. (P-H) ¶ 80,283, at 80,690 (D.D.C. 1980) (stating in dicta that a "computer does the excising ordinarily performed by an agency employee with a black marking pen"), *aff'd*, 678 F.2d 315 (D.C. Cir. 1982).

Third, ATF tries to further excuse its failure to search for responsive records, as required by FOIA, by confusing the language of the FOIA with the Tiahrt Amendment. The Tiahrt Amendment prohibits the *disclosure* of certain trace data; it does not prohibit the *search* of trace data. *See* 125 Stat. 552, 609-610. Even if this was the case, as discussed more below, the Tiahrt explicitly permits the disclosure of certain trace information, as underscored by the fact that the agency has previously released aggregate trace data to members of the public. *See* Baranetsky Decl., Ex 12, 13, and 14. Regardless, the agency may not employ choice language of Tiahrt Amendment to circumvent its obligations statutorily required under FOIA.

Fourth, the Houser declaration does not make any mention of a search for the fourth category of documents and the records identified by the ATF did not include any memos, as requested in the fourth category. *See generally* Houser Decl. The lack of *any* responsive records is surprising, considering that the ATF has clearly sent such communications to local law enforcement. *See* Baranetsky Decl., Ex. 22. While the adequacy of the search is judged by "the reasonableness of the search performed[,] the results of the search are…not entirely irrelevant." *Hiken v. U.S. Dep't of Defense*, 521 F. Supp. 2d 1047, 1054 (N.D. Cal. 2007).

As these statements and conspicuous omissions plainly show, the government's wholesale failure to search for responsive records was not reasonably calculated to uncover any relevant documents; and was therefore plainly inadequate.

### 2.   The Government Has Improperly Withheld Agency Records Under Exemption 3

Exemptions under FOIA are narrowly construed because there is a "strong presumption in favor of disclosure." *Lahr*, 569 F.3d at 973. The government has improperly invoked Exemption 3 to withhold an unknown number of pages in their entirety involving aggregate data, claiming that they are exempt under the Tiahrt Amendment of The Consolidated Appropriations Act. Gov. Br. at 8-12; Houser Decl. ¶ 28. FOIA Exemption (b)(3) exempts from disclosure records when they are:

-14 -

*specifically* exempted from disclosure by statute if that statute (A)(i) requires that the matter be withheld from the public in such a manner as to *leave no discretion* on the issue; or (A)(ii) establishes *particular criteria* from withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the Open FOIA Act of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3) (emphasis added).

There is a two-part inquiry to determine whether Exemption 3 applies. *Carlson v. United States Postal Serv.*, 504 F.3d 1123, 1127 (9th Cir. 2007). First, courts "determine whether the withholding statute meets the requirements of Exemption 3. Then, [they] determine whether the requested information falls within the scope of the withholding statute." *Id.* Additionally, in order to justify invoking Exemption 3, the agency must submit "a detailed affidavit showing that the information *logically* falls within the claimed exemptions." *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1992) (quoting *Hunt v. CIA*, 981 F.2d 1116, 1119 (9th Cir. 1992)) (emphasis added). In essence, it must provide both reason and facts to support its decision. *Hunt*, 981 F.2d at 1120.

Here, the government invokes the 2012 Appropriations Act, which prohibits ATF from using federal funds "to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center." 125 Stat. at 609-610. However, according to simple rules of statutory interpretation, this court should find that the 2012 Appropriations Act does not qualify as a withholding statute, as it doesn't satisfy the requirements of 5 U.S.C. § 552(b)(3)(A)(i), (A)(ii) or (B), *see generally City of New York*, 429 F. Supp. at 524 (interpreting the Tiahrt Rider narrowly in accordance with rules of statutory construction). The act fails to meet these requirements, because it does not "specifically exempt" aggregate data, it leaves discretion to the agency for withholding material, and it does not specifically cite to Exemption 3, respectively. Regardless, and more importantly, even if the act qualifies as a withholding statute, the requested information does not fall within the scope of the statute – which explicitly permits for the release of

the requested records (*i.e.* aggregate trace data and communication between law enforcement).

*Minier*, 88 F.3d at 801.

Though an agency's affidavits are entitled to deference, the Court performs a de novo

review of Exemption 3 claims. *Long v. IRS*, 742 F.2d 1173, 1182 (9th Cir. 1984).

(a) **The Government Has Failed to Meet Its Burden of Showing That The Consolidated Appropriations Act Qualifies As A Withholding Statute Under 5 U.S.C. § 552 (b)(3)(A)(i) or (A)(ii).**

Sections 5 U.S.C. § 552(b)(3)(A)(i) or (A)(i) state that the statute must "*specifically*

exempt...in such a manner as to *leave no discretion* on the issue; or...establishes *particular criteria*

from withholding or refers to particular types of matters to be withheld." To determine whether a

statute satisfies these requirements and is a withholding statute under Exemption 3, the court looks

to plain language of the statute. *See Reporters Comm. For Freedom of Press v. U.S. Dep't of*

*Justice*, 816 F.2d 730, 735 (D.C. Cir. 1987) (explaining that applicability of Exemption 3 to a

statute is determined by the statute's actual words), *rev'd on other grounds by* 489 U.S. 749 (1989).

As the Tiahrt exceptions make plain, the Appropriations Act of 2012 does not specifically

exempt from disclosure aggregate trace data or communications with local law enforcement.

Instead, the Tiahrt exceptions specifically permit these categories of trace records to be released.

Moreover, the Tiahrt exceptions allow for agency discretion by permitting the ATF to determine

what trace information qualifies for release by failing to provide specific criteria. Indeed, another

organization has highlighted this same statutory failure in an action filed in the United States

District for the Southern District of New York. Complaint, *Everytown For Gun Safety Support*

*Fund v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, No. 1:18-cv-02296 (S.D.N.Y.

March 15, 2018). This is further as evidenced by ATF's seemingly ad hoc decision to make certain

aggregate trace data available to the public. Baranetsky Decl., Ex 12, 13, and 14; Houser Decl. ¶

22 (stating ATF produced trace data with appropriate redactions).

-16-

(b)   **The Government Has Failed to Meet Its Burden of Showing That The Consolidated Appropriations Act Qualifies As A Withholding Statute Under 5 U.S.C. § 552 (b)(3)(B).**

The government has failed to meet its burden and show that the Consolidated Appropriations Act qualifies as a withholding statute under Exemption 3 because the act does not cite to 5 U.S.C. § 552(b)(3)(B).  Exemption 3 explicitly states it will only apply, "if [a statute] enacted after the date of enactment of the Open FOIA Act of 2009, specifically cites to this paragraph." 5 U.S.C. § 552(b)(3).  Therefore "[t]o satisfy Exemption 3. . . the Consolidated Appropriations Act of 2012 must reference Exemption 3." *Fowlkes v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 67 F. Supp. 3d 290 (D.D.C. 2014) *overruled by Fowlkes v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 139 F. Supp. 3d 287, 291-92 (D.D.C. 2015); *see also Smith v. ATF*, No. 13–13079, 2014 WL 3565634 *13 n.2 (E.D. Mich. July 18, 2014) (stating the Consolidated Appropriations Act of 2010 does not appear to satisfy § 552(b)(3)(B)).

Because the Consolidated Appropriations Act of 2012, enacted on December 23, 2011, does not specifically cite to § 552(b)(3)(B), FOIA Exemption 3 should not apply unless Congress amends the statute.  The failure to mention § 552(b)(3)(B) in the Consolidated Appropriations Act is even more meaningful given that Congress repeatedly failed to cite it the 2010 and 2012 versions – following the Open FOIA Act of 2009.  Courts always ensure statutes meet requirements of 5 U.S.C. § 552(b)(3). *See, e.g., ACLU v. CIA*, 892 F. Supp. 2d 234 (D.D.C. 2012); *Audubon Soc'y of Portland v. U.S. Natural Res. Conservation Serv.*, 841 F. Supp. 2d 1182, 1185 (D. Or. 2012) ("Both parties agree that § 8791 is a 'withholding statute' that meets the requirements of Exemption 3").

Indeed, the government admits in its brief that the Appropriations Act of 2012 does not meet the requirements of Exemption 3.  Gov. Br at 10 (stating "the versions of the Tiahrt amendment passed in 2010 and 2012 were 'enacted after the date of enactment of the Open FOIA

-17-

Act of 2009,' and do not 'specifically cite[] to' 5 U.S.C. § 552(b)(3) as currently required by Exemption 3."). Still, it argues "the issue did not 'need [to] be addressed'" by citing to caselaw outside this Circuit which asserts that Exemption 3 is satisfied because the Appropriations Act of 2008 "provides a permanent prohibition against disclosure that is not limited to the fiscal year of the appropriated funds granted therein." Gov. Br at 10 (citing *Abdeljabbar v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 74 F. Supp. 3d 158, 174-75 (D.D.C. 2014) (quoting *Smith*, 2014 WL 3565634, at *5 n. 2 (emphasis added)). That argument fails for several reasons.

First, while the Tiahrt Rider in the Appropriations Act of 2008 may have been "a permanent prohibition against disclosure" of certain trace data, that rider was wholly replaced by the Consolidated Appropriations Act of 2012, which does not meet the necessary requirement. As a minority of courts have acknowledged, if the language of the statute is read on its face, as is necessary, the statute does not meet the requirement of Exemption 3. *Reporters Comm. For Freedom of Press*, 816 F.2d at 735 (explaining that the applicability of Exemption 3 is determined by the actual words of the statute); *Smith*, 2014 WL 3565634 at *13 n.2 (stating the Consolidated Appropriations Act of 2010 does not appear to facially satisfy subsection 5 U.S.C. § 552(b)(3)(B)).

Second, none of the cases the government cites are controlling. While a majority of courts have shoehorned Exemption 3 into the Consolidated Appropriations Act of 2012 – none of those decisions are binding on this court – which faces this question for the first time. *But see Caruso v. ATF*, No. C15-1990-JCC, 2011 WL 669132, at *3 n. 1 (D. Or. Feb. 16, 2011), *rev'd on other grounds* 495 Fed. Appx. 776 (9th Cir. 2012) ("[T]he information [the plaintiff] seeks squarely falls under the statutory language of the Appropriations Act and within the scope of Exemption 3").

Third, and most importantly, even if this court is persuaded by the majority of cases listed in the government's brief, Gov. Br. at 10-11, they are inapplicable because this case deals with a key different fact. In all of those cases, the requesters asked for *identifiable* trace data, which is

-18-

Opp. to Def's Mot. Summ. J.; Not. of Cross Mot. and Cross Mot.
Summ. J.; Mem. in Supp. of Cross Mot. Summ. J.

admittedly prohibited from disclosure under the Tiahrt Amendment. Therefore courts in those cases correctly held that the 2008 Appropriations Act "provides a permanent prohibition against disclosure that is not limited to the fiscal year of the appropriated funds granted therein." *See Caruso*, 2011 WL 669132, at *3 n. 1 (seeking specific records "detailing [individual] weapons submitted, traded, or exchanged for repairs pertaining to Valiant or Caruso"); *Abdeljabbar*, 74 F. Supp. 3d at 174–75 (same). However, here, plaintiff requested for *aggregate* trace data and law enforcement communications which are explicitly excluded under the Tiahrt Amendment, and therefore no "permanent prohibition against disclosure" is applicable. Given this marked difference, the government has not sufficiently argued why this court should ignore the 2012 Appropriation Act's failure to meet the plain language requirement in Exemption 3.

### (c)   The Government Has Failed to Meet Its Burden of Showing That The Withheld Material Falls Within The Scope of The Statute for Purposes of Exemption 3 By Relying On Unsound Logic and Incongruous Facts

The government has failed to meet its burden of logically proving that the withheld information falls within the scope of the withholding statute. *Carlson*, 504 F.3d at 1127. In order to justify invoking Exemption 3, the agency must submit "a detailed affidavit showing that the information logically falls within the claimed exemptions." *Minier*, 88 F.3d at 800 (quoting *Hunt*, 981 F.2d at 1119). In essence, it must provide both reason and facts to support its decision. *Hunt*, 981 F.2d at 1120. "[G]eneral assertions" will not do. *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 807 (9th Cir. 1995) (quoting *Wiener*, 943 F.2d at 981). It must also show that its justifications "are not controverted by contrary evidence in the record or by evidence of [agency] bad faith." *Hunt*, 981 F.2d at 1119.

The ATF has submitted a unsatisfactory showing because it does little more that rely on general assertions to justify withholding based on the 2012 Appropriations Act. In the last three paragraphs of the Houser Declaration, the ATF explains that aggregate trace data should be

-19 -

withheld under Exemption 3 because of the blanket prohibition under the Tiahrt Amendment, despite the Tiahrt exceptions.  Houser Decl. ¶¶ 26-28.  Like the inadequate agency affidavit in *Wiener*, the Houser Declaration simply recants that "Congress has consistently restricted ATF's use of federal funds to disclose part or all of the contents of the Firearms Trace System database" and does mention the Tiahrt exceptions until the last paragraph of the Houser Declaration, in which it attempts to diminish the plain language of statute:

> Further, it is ATF's understanding that this proviso *does not permit ATF to use federal funds to create and release new statistical reports or statistical aggregate data in response to FOIA requests or otherwise disclose the contents of the Firearms Trace System database in response to such requests.*

Houser Decl. ¶ 28.  As the Ninth Circuit found in *Wiener*, the government fails to justify its Exemption 3 withholding where it "does little more than recite the language" of the statute. *Wiener*, 943 F.2d at 982.

Moreover, the government's argument rests on unsound logic.  It argues that Tiahrt exception (C) for "statistical aggregate data" simply does not apply to "statistical aggregate data." Houser Decl. ¶ 28; Gov. Br. at 12.  This interpretation is not based on any caselaw, but instead appears to be based on an incoherent statutory interpretation.  Such circular logic that attempts to escape the plain language of the Tiahrt exception, "den[ies] the plaintiff the opportunity to contest the [agency's] conclusions, and thus distort[s] the adversary process." *Berman*, 501 F.3d at 1141. Without more, the government cannot withstand this Circuit's requirement that an agency show that information logically falls within a claimed exemption. *Minier*, 88 F.3d at 800.

ATF also mischaracterizes the plain language of Tiahrt exceptions.  ATF states that the Tiahrt exceptions allow the agency to produce statistical reports but not aggregate data.  Houser Decl. ¶ 28; *see also* Gov. Br. at 12 (stating it "permits ATF to publish its annual Firearms Manufacturers And Export Reports (subpart A) and state-by-state and international reports utilizing trace data (subpart C)).  However, the Tiahrt Amendment makes an exception for producing reports

-20-

as well as "statistical aggregate data." 2012 Appropriations Act, 125 Stat. 552, 609-610.  As the government's brief states, the Tiahrt Amendment makes an exception for "the publication of annual statistical reports . . . *or* statistical aggregate data[.]" Gov. Br. at 12 (emphasis added).  The disjunctive "or" in Tiahrt exception (C) distinguishes "statistical data" from the previous clause about "annual statistical reports." *Id.*  Still ATF argues that "the provision's language does not permit or even contemplate the release of trace data in response to FOIA."  Gov. Br. at 12; *see also* Houser Decl. ¶ 28 ("Congress intended to permit ATF to continue to publish statistical reports").

Beyond these illogical assertions, ATF's argument is "controverted by contrary evidence in the record." *Hunt*, 981 F.2d at 1119.  ATF has previously interpreted exception (C) to permit disclosure of statistical aggregate data to private parties outside of the confines of an annual statistical report.  On January 31, 2018, ATF released to plaintiff aggregate trace data which is contained in the ATF's database. *See* Houser Decl. ¶ 22 (discussing release of aggregate trace data).  ATF states that this data was not directly obtained from the Firearms Trace System database, but this data appears to be identical to information in the database and not in report format. *Id.* ("reflecting traces of firearms to law enforcement agencies").  Moreover and more importantly, ATF has previously cited to exception (C) in court briefs to justify release of statistical aggregate data to private parties. *See* Baranetsky Decl., Ex. 12 at 5, n.2) (ATF asserting that the Tiahrt Rider did not prevent it from disclosing aggregate data to the plaintiff); Baranetsky Decl., Ex. 13 at 5, n.2 (same); Baranetsky Decl., Ex. 14 (same).

In each of the above cases, all brought against the ATF pursuant to the Administrative Procedures Act, the plaintiffs argued that the ATF had acted outside of its statutory scope by requiring gun dealers along the Southwest border of the United States to submit multiple sales reports for rifle sales. *Id.*  As part of these cases, the ATF filed "Administrative Records" with the court, which appear to include queries of the Firearms Trace System database, but which redacted

-21-

the names of specific firearms dealers.  *Id.*  In both *Ron Peterson Firearms* and *10 Ring Precision*, the plaintiff gun dealers argued the names of the gun dealers should not have been redacted.  In response, ATF argued that it could release the data but was required to redact gun dealer names due to the Tiahrt Rider.  *See* Baranetsky Decl., Ex. 12; Baranetsky Decl., Ex. 13.  ATF also argued that the "unredacted information that was included in the Administrative Record (indicating the number of firearms recovered from FFLs in particular states, without revealing the identities of those FFLs) constitutes 'statistical aggregate data regarding firearms traffickers and trafficking channels,' 125 Stat. at 610, the disclosure of which is permitted by the statute."  Baranetsky Decl., Ex. 12, at 5, n.2 (emphasis added); *see also 10 Ring Precision, Inc.*, at 5 n. 2 (same).  Although this issue was not briefed in *National Shooting Sports Foundation, Inc. v. Melson*, the ATF provided the exact same statistical aggregate data in the administrative record for that case. *See* ATF Administrative Record 0388-0696, No. 11-cv-01401 (D.D.C. Sept. 12, 2011).

Such evidence appears to contradict the agency's claims and underscore that, according to the ATF's own language, release of "statistical aggregate data regarding firearms traffickers and trafficking channels. . . is permitted by the statute."  Baranetsky Decl., Ex. 12.

### 3.    The Government Has Failed to Show That Releasing Aggregate Trace Data Would Require the Agency to Produce New Documents

One of the DOJ's main arguments is that CIR is asking for the issuance of a new annualized report or "new record," which FOIA does not require.  Gov. Br. at 6-8.  ATF has failed to show that the disclosure of aggregate trace data would require it to produce new data.

FOIA establishes the public's right of access to existing agency records.  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161–62 (1975) (stating FOIA does not compel agencies to create documents).  For decades, as government databases have become increasingly prevalent, courts have found that queries of those databases do not amount to the creation of new documents.  *See, e.g.,*

*Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 259 (D.D.C. 2012).  Instead, "as Congress noted in the legislative history to the E-FOIA Amendments, computer records found in a database rather than a file cabinet may [simply] require the application of codes or some form of programming to retrieve the information." *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 259 (citing H.R. Rep. No. 104-79, 104th Cong., 1st Sess., at 22 (1995)) (quotations and alterations omitted).  Conclusively, "sorting a database by a particular data field (*e.g.*, date, category, title)" through "the application of codes or some form of programming…does not involve creating new records or conducting research—it is just another form of searching that is within the scope of an agency's duties in responding to FOIA requests." *Id.*

Here, ATF concedes it need only perform a search of its database using codes that are on hand to retrieve the requested records.  For example, the Houser Declaration states, "the Firearm Trace System database includes close-out codes for each trace, including those related to law enforcement and government agencies identified above."  Houser Decl. ¶ 24.  Similarly, in its brief the government states "it is NTC policy" to use a code "indicating 'THIS FIREARM WAS TRACED TO A GOVERNMENT AND/OR LAW ENFORCMENT AGENCY.'"  Gov. Br. 3-4.  Thus, just as in other cases, the search of the ATF database using readily available codes does not amount to the creation of new documents.  *See, e.g.*, *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 259 (requiring "a federal agency to produce entire fields of data from particular electronic databases in response to a FOIA request…and such requests could certainly be considered requests for aggregate data"); *Long v. U.S. Dep't of Justice*, 450 F. Supp. 2d 42, 48 (D.D.C. 2006) (finding when a database contains both exempt and non-exempt information, FOIA simply requires agencies disclose all non-exempt data points that it retains in electronic databases) (quotation marks omitted).

In addition, ruling in favor of the government's creative argument would put many federal government databases beyond the reach of the FOIA, as a number of government agencies

increasingly hold large amounts of information in databases. *See, e.g., ACLU Found. of Ariz. v. U.S. Dep't of Homeland Sec.*, No. CV-14-02052, 2017 U.S. Dist. LEXIS 11610, at *40 n. 17 (D. Ariz. Jan. 27, 2017) (stating the agency searched its database); *Henry v. U.S. Dep't of Justice*, No. C-13-05924 DMR, 2015 U.S. Dist. LEXIS 117311, at *22-26 (N.D. Cal. Sept. 1, 2015) (discussing FBI's search of several databases); *Bothwell v. CIA*, No. 13-cv-05439, 2014 U.S. Dist. LEXIS 144151, *13 (N.D. Cal. Oct. 9, 2014) (stating the agency searched the database and then manually reviewed hits for responsiveness).

### 4.   The Government Has Officially Acknowledged Information Withheld Under All Claimed Exemptions

When information has already been "officially acknowledged," its disclosure may be compelled over an otherwise valid claim of any FOIA exemption. *See ACLU of N. Cal. v. U.S. Dep't of Justice*, 880 F.3d 471, 491 (2018); *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990); *Elec. Frontier Found. v. Nat'l Sec. Agency*, No. 14-cv-03010-RS, 2016 WL 1059389, at *2 (N.D. Cal. March 18, 2016).  Information is "officially acknowledged" when it is as specific as the information previously released, it matches the information previously released, and it has already been made public through an official and documented disclosure. *Fitzgibbon*, 911 F.2d at 765.

Substantial portions of the requested documents have already been released by the ATF to CIR.  To the extent information withheld is has been made available to the public, the DOJ cannot withhold it under any FOIA exemption.

## IV.   CONCLUSION

For the foregoing reasons, the government's motion for summary judgment should be denied, and CIR's cross motion for summary judgment should be granted.

DATED: May 24, 2018                    Respectfully submitted,


                                       D. Victoria Baranetsky
                                       THE CENTER FOR INVESTIGATIVE REPORTING
                                       1400 65th St., Suite 200
                                       Emeryville, CA 94608
                                       vbaranetsky@revealnews.org
                                       Telephone: (510) 982-2890

Opp. to Def's Mot. Summ. J.; Not. of Cross Mot. and Cross Mot.
Summ. J.; Mem. in Supp. of Cross Mot. Summ. J.