# EXHIBIT A

Heather M. Burke (SBN 284100)
Email: hburke@whitecase.com
Bijal V. Vakil (SBN 192878)
Email: bvakil@whitecase.com
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA, 94306
Telephone:    (650) 213-0300
Facsimile:    (650) 213-8158

—and—

Paul B. Carberry (*pro hac vice*)
Email:  pcarberry@whitecase.com
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone:    (212) 819-8200
Facsimile:    (212) 354-8113

*Attorneys for Amicus Curiae
Brady Center to Prevent Gun Violence*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CENTER FOR INVESTIGATIVE REPORTING,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>Defendant. | Case No. 3:17-cv-06557-JSC<br><br>**AMICUS CURIAE BRADY CENTER TO PREVENT GUN VIOLENCE'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        June 28, 2018<br>Courtroom:   F, 15th Floor<br>             U.S. District Courthouse<br>             450 Golden Gate Avenue<br>             San Francisco, CA<br>Judge:       Hon. Jacqueline S. Corley |

AMERICAS 94758042 (2K)

BRADY CENTER'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
3:17-CV-06557-JSC

WHITE & CASE LLP
ATTORNEYS AT LAW

# **TABLE OF CONTENTS**

I. ISSUES TO BE DETERMINED ............................................................................................1

II. INTRODUCTION .................................................................................................................1

III. BACKGROUND ...................................................................................................................1

    A. Data Requested ..........................................................................................................1

    B. ATF Trace Data .........................................................................................................2

    C. The Tiahrt Amendment ..............................................................................................3

    D. Gun Violence in the United States .............................................................................3

    E. Gun Trace Data Can Help Policymakers Develop Solutions to the Epidemic of Gun Violence ..............................................................................................................5

IV. ARGUMENT .........................................................................................................................6

    A. FOIA Requires that the Tiahrt Amendment Be Interpreted Narrowly .....................7

        1. FOIA Facilitates Public Access to Information ............................................7

        2. Limitations on Access to Information Requested Pursuant to FOIA Should Be Interpreted Narrowly .....................................................................9

    B. The Tiahrt Amendment Specifically Exempts Statistical Aggregate Data............10

    C. ATF Is Attempting to Impermissibly Insulate Itself from Complying with Appropriate FOIA Requests ...................................................................................10

V. CONCLUSION ....................................................................................................................14

WHITE & CASE LLP
ATTORNEYS AT LAW

AMERICAS 94758042 (2K)

i

BRADY CENTER'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
3:17-CV-06557-JSC

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*City of Chicago v. U.S. Dep't of Treasury*,
  No. 01 C 3835, 2002 U.S. Dist. LEXIS 3813 (N.D. Ill. Mar. 7, 2002) ..........................9

*Dep't of the Air Force v. Rose*,
  425 U.S. 352 (1976) .................................................................................................8

*EPA v. Mink*,
  410 U.S. 73 (1973) ..................................................................................................8

*Hall v. CIA*,
  881 F. Supp. 2d 38 (D.D.C. 2012) ...........................................................................12

*Hamdan v. U.S. Dep't of Justice*,
  797 F.3d 759 (9th Cir. 2015) ................................................................................7, 8

*Kowack v. U.S. Forest Serv.*,
  766 F.3d 1130 (9th Cir. 2014) .........................................................................8, 9, 13

*Lahr v. Nat'l Transp. Safety Bd.*,
  569 F.3d 964 (9th Cir. 2009) ....................................................................................7

*LaRouche v. SEC*,
  289 Fed. App'x 231 (9th Cir. 2008) (unpublished) ..................................................10

*NAACP v. Acusport Corp.*,
  216 F. Supp. 2d 59 (E.D.N.Y. 2002) ........................................................................9

*Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975) ...............................................................................................10

*Nat'l Sec. Counselors v. CIA*,
  898 F. Supp. 2d 233 (D.D.C. 2012) ...................................................................11, 12

*Nat'l Sec. Counselors v. CIA*,
  960 F. Supp. 2d 101 (D.D.C. 2013) .........................................................................12

*Shapiro v. CIA*,
  170 F. Supp. 3d 147 (D.D.C. 2014) .........................................................................12

*Snyder v. Dep't of Def.*,
  No. 14-cv-01746-KAW, 2015 WL 9258102 (N.D. Cal. Dec. 18, 2015) ...................10

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
  489 U.S. 749 (1989) .............................................................................................7, 8

AMERICAS 94758042 (2K)

ii

BRADY CENTER'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
3:17-CV-06557-JSC

WHITE & CASE LLP
ATTORNEYS AT LAW

*Yagman v. Pompeo*,
    868 F.3d 1075 (9th Cir. 2017) ............................................................................................9, 13

*Zemansky v. EPA*,
    767 F.2d 569 (9th Cir. 1985) ....................................................................................................10

**FEDERAL STATUTES**

Freedom of Information Act, 5 U.S.C. § 552 ........................................................................ passim

Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213 ...........................................................2

The Openness Promotes Effectiveness in our National Government Act of 2007 ...........................7

Pub. L. 112-55, 125 Stat. 552, 609-610 (2011) ..........................................................................3, 10

Pub. L. No. 108-7 § 644 (2003) .........................................................................................................3

**MISCELLANEOUS**

*America's gun culture in 10 charts*, BBC NEWS, (Mar. 21, 2018),
    http://www.bbc.com/news/world-us-canada-41488081 ............................................................4

Angelina Jacqueline Tang, *Taking Aim at Tiahrt*, 50 WM. & MARY L. REV. 1787,
    1807-18 (2009)..........................................................................................................................3

Everytown for Gun Safety, Mayors Against Illegal Guns, and The National Urban
    League, *Strategies for Reducing Gun Violence in American Cities*, at 35 (June
    2016) https://everytownresearch.org/documents/2016/06/strategies-reducing-gun-
    violence-american-cities.pdf ..................................................................................................5, 6

*Firearms Trace Data - 2016*, BUREAU OF ALCOHOL, TOBACCO AND FIREARMS, DEP'T
    OF TREASURY, https://www.atf.gov/resource-center/firearms-trace-data-2016 (last
    visited May 31, 2018). ..............................................................................................................2

*The First Estimate of 2017 Gun Deaths Is In*, THE TRACE, (Apr. 25, 2018),
    https://www.thetrace.org/rounds/gun-deaths-increase-2017/ ....................................................4

*FOIA.gov*, U.S. DEP'T OF JUSTICE, *available at* https://www.foia.gov/ (last visited
    May 31, 2018)............................................................................................................................7

Gun Violence Archive, GEN. METHODOLOGY, http://www.gunviolencearchive.org/
    (last visited May 31, 2018) .......................................................................................................4

Janet Weiner, et. al, *Reducing firearm violence: a research agenda*, NAT'L ACAD. OF
    SCI., (Apr. 2007), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2610593/. .......................5

Kate Irby, *Nobody knows exactly how many assault rifles exist in the U.S.—by design*,
    MCCLATCHY, (Feb. 23, 2018), http://www.mcclatchydc.com/news/nation-
    world/national/article201882739.html......................................................................................5

WHITE & CASE LLP
ATTORNEYS AT LAW

AMERICAS 94758042 (2K)

iii

BRADY CENTER'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
3:17-CV-06557-JSC

Lily Rothman, *FOIA at 50: How American Views of Transparency Have Changed*, TIME, (July 21, 2016), http://time.com/4408574/foia-50-american-transparency-polls/ .................................................................................................................... 7

Maya Rhodan, *Gun-Related Deaths in America Keep Going Up*, TIME, (Nov. 6, 2017), http://time.com/5011599/gun-deaths-rate-america-cdc-data/ .............................................. 4

S. Rep. No. 813, 89th Cong., 1st Sess., 5 (1965) ................................................................................ 8

*Tiahrt Amendments*, GIFFORDS LAW CENTER, http://lawcenter.giffords.org/gun-laws/federal-law/other-laws/tiahrt-amendments/ (last visited May 30, 2018). ............................... 3

WHITE & CASE LLP
ATTORNEYS AT LAW

AMERICAS 94758042 (2K)

iv

BRADY CENTER'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
3:17-CV-06557-JSC

## I. ISSUES TO BE DETERMINED

Whether Plaintiff is entitled to the information it requested under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

## II. INTRODUCTION

The Freedom of Information Act carries with it a presumption in favor of disclosure and the public's right of access to government information. The information requested by Plaintiff is important to address a national crisis and there is no recognized exception under FOIA that justifies or counsels towards withholding it. The "Tiahrt Amendment," which the Department of Justice (the "DOJ") relies upon in asserting that it need not produce the requested information, should not be construed so as to justify the DOJ Bureau of Alcohol, Tobacco, Firearms and Explosives' ("ATF") denial of the release of "statistical aggregate data" from its gun trace database, particularly where the Tiahrt Amendment explicitly contemplates the disclosure of precisely this sort of data. Amicus Curiae Brady Center to Prevent Gun Violence ("Brady Center") respectfully requests that this Court order production of the requested information.

## III. BACKGROUND

### A. Data Requested

The Brady Center defers to the Parties' description of the procedural background of this case. This dispute concerns, at least in part, DOJ's refusal to produce data that Plaintiff, a non-profit reporting organization, has requested pursuant to FOIA, namely the "[t]otal number of weapons traced back to former law enforcement ownership, annually from 2006 to the present."[1] *See* Compl. ¶ 27; Gov. Br. at 6; Pl. Br at 9-10. DOJ has taken the position that producing the aggregate data requested would require ATF to "create a new annualized statistical report" and that FOIA does not require it to create a document in response to a request, and that disclosure of the data requested is prohibited by the "Tiahrt Amendment." Gov. Br. at 6-8. The Parties cannot and do not dispute that

---

[1] Plaintiff also asserts that Defendant failed to conduct an adequate search with regard to its request for "[c]opies of any and all communications notifying law enforcement agencies when their current or former weapons have entered or been involved in an E-Trace." Pl. Br. at 9-10. The Brady Center takes no position on the adequacy of the DOJ's search for this information.

WHITE & CASE LLP
ATTORNEYS AT LAW

the data requested falls under the umbrella of the term "statistical aggregate data," as that term is used in the Tiahrt Amendment.

**B.     ATF Trace Data**

Pursuant to the Gun Control Act of 1968 ("GCA"), Pub. L. No. 90-618, 82 Stat. 1213 (codified as amended at 18 U.S.C. §§ 921-930), and as authorized by the U.S. Attorney General, ATF is the sole federal agency authorized to trace firearms. Gov. Br. at 2. It maintains the Firearm Trace System database, which traces firearms collected by local law enforcement (and for which a "tracing" request has been submitted to ATF) and includes information pertaining to the ownership history of the firearms so collected. *Id.* Tracing a firearm follows the path of the firearm from its manufacture or import through its distribution and eventual sale. *Id.* When a "tracing" request is made, the data obtained in conducting the trace is recorded in the database. *Id.* at 2-4. In conjunction with each individual "trace," this information includes, for example, the model of firearm used in the event that led to the tracing request, the type of event that led to its recovery (e.g. homicide, suicide, robbery, etc.), the retail seller of the firearm, and the amount of time between the sale of the firearm and the event resulting in its recovery. *Id.* at 3. The Firearm Trace System database contains information associated with every single firearm trace conducted by ATF, which number in the tens of thousands per year, and includes data associated with millions of individual "traces." *Id.* at 4.

Relying on trace data in the database, ATF releases several annual reports that reflect selected aggregations of data contained in the Firearm Trace System database. *See Firearms Trace Data - 2016*, BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, DEP'T OF JUSTICE, https://www.atf.gov/resource-center/firearms-trace-data-2016 (last visited May 31, 2018). These reports show, for example, the total number of firearms sourced and recovered in a given year, the most common types of guns traced, the state-by-state average "time-to-crime" of firearms recovered and traced in the United States, the categories of incidents leading to a trace request, and more. *Id.* Indeed, the database contains over 800 fields associated with each trace and ATF annual reports represent a select few of the possible ways to aggregate the trove of data contained in the database. Gov. Br. at 4.

AMERICAS 94758042 (2K)                                                     2

BRADY CENTER'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
3:17-CV-06557-JSC

WHITE & CASE LLP
ATTORNEYS AT LAW

**C.     The Tiahrt Amendment**

The "Tiahrt Amendment" (named after sponsoring Representative Todd Tiahrt) restricts ATF from expending appropriated funds to disclose certain materials contained within the Firearms Trace System database.  It was first attached to an appropriations bill in 2003 and has been included in several appropriations bills since, most recently in 2012.  *See generally* Angelina Jacqueline Tang, *Taking Aim at Tiahrt*, 50 WM. & MARY L. REV. 1787, 1807-18 (2009); *Tiahrt Amendments*, GIFFORDS LAW CTR., http://lawcenter.giffords.org/gun-laws/federal-law/other-laws/tiahrt-amendments/ (last visited May 31, 2018).  The original Tiahrt Amendment (as included in the 2003 Appropriations Bill) explicitly prohibited the expenditure of appropriated funds for ATF's disclosure of gun trace information pursuant to a FOIA request.  Pub. L. No. 108-7 § 644 (2003).

Amendments contained in subsequent versions of the Tiahrt Amendment have opened certain categories of information to public release, including "statistical aggregate data."  In 2009, the Tiahrt Amendment was modified to include a carve-out from its restrictions on the release of gun trace data for certain "statistical aggregate data," a carve-out that remains in the most recently passed version of the Tiahrt Amendment, which reads in relevant part:

> [D]uring the current fiscal year and in each fiscal year thereafter, no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System Database maintained by [ATF] . . . except that **this proviso shall not be construed to prevent . . . the publication of** annual statistical reports on products regulated by [ATF], including total production, importation, and exportation . . . , **or statistical aggregate data** regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations[.]

Pub. L. 112-55, 125 Stat. 552, 609-610 (2011) (emphasis added).

**D.     Gun Violence in the United States**

Gun violence in the United States has become a national crisis.  Mass shootings have become ubiquitous over the past several years, tragically searing into our national consciousness places such as the Pulse Nightclub, the Route 91 Harvest Music Festival, Marjory Stoneman Douglas High

WHITE & CASE LLP
ATTORNEYS AT LAW

School and countless others. Mass shootings aside, rates of firearm-related incidents have reached staggering numbers. According to the Gun Violence Archive,[2] in 2018 alone—in less than half the year—there have been 23,881 "gun incidents." *See* Gun Violence Archive, GEN. METHODOLOGY, http://www.gunviolencearchive.org/ (last visited May 31, 2018). This includes 5,877 gun-induced deaths (258 of which were children ages 0-11 and 1,080 of which were teenagers ages 12-17), 10,875 injuries, 107 mass shootings, 109 shootings of officers, 930 shootings of suspects by police, 845 reported incidents of home invasions using guns, 688 of defensive use incidents, and 699 unintentional shootings. *Id*.

The CDC reported 38,658 gun deaths in 2016, 36,252 in 2015, and 33,594 in 2014. *The First Estimate of 2017 Gun Deaths Is In*, THE TRACE, (Apr. 25, 2018), https://www.thetrace.org/rounds/gun-deaths-increase-2017/. Of those 33,594 deaths in 2014, 21,386 were suicides and 11,008 were homicides. *See America's gun culture in 10 charts*, BBC NEWS, (Mar. 21, 2018), http://www.bbc.com/news/world-us-canada-41488081. In 2016, gun deaths by homicides increased by nearly 1,500 (from 9,600 in 2015 to approximately 11,000 gun deaths in 2016 according to the FBI's Annual Crime Report). *See* Maya Rhodan, *Gun-Related Deaths in America Keep Going Up*, TIME, (Nov. 6, 2017), http://time.com/5011599/gun-deaths-rate-america-cdc-data/.

These numbers of gun-related deaths do not even come close to accounting for the total number of gun-related incidents over the past few years. In 2014, the Gun Violence Archive reported 51,866 gun incidents, which includes suicides, homicides, and nonfatal injuries. *See The First Estimate of 2017 Gun Deaths Is In*. In 2015, it reported nearly 2,000 more incidents—53,718 incidents. And in 2016, it reported over 5,000 more incidents than the year before—58,818 gun-related incidents. *Id*. In 2017, the numbers continued to rise, this time to 61,331. *Id*.

---

[2] The Gun Violence Archive, a non-profit organization, compiles gun-related incidents that are reported by the media, the police, and in aggregate data in an effort to provide data relating to gun violence to the general public. *See General Methodology*, GUN VIOLENCE ARCHIVE, http://www.gunviolencearchive.org/methodology (last visited May 31, 2018). While Gun Violence Archive's information is helpful, it is prudent to recognize that its reported numbers are probably *even lower* than actual incidences, as many nonfatal firearm-related injuries are not reported. *See The First Estimate of 2017 Gun Deaths Is In*, THE TRACE, (Apr. 25, 2018), https://www.thetrace.org/rounds/gun-deaths-increase-2017/.

WHITE & CASE LLP
ATTORNEYS AT LAW

AMERICAS 94758042 (2K)                                       4
BRADY CENTER'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
3:17-CV-06557-JSC

### E. Gun Trace Data Can Help Policymakers Develop Solutions to the Epidemic of Gun Violence

Gun trace data can prove crucial in developing effective policy solutions to prevent gun violence, including violence perpetrated by guns originating with law enforcement agencies. As a recent National Academy of Science report concluded, "inadequate data and inadequate access to existing data, are among the most critical barriers to understanding gun violence." Janet Weiner, et. al, *Reducing firearm violence: a research agenda*, NAT'L ACAD. OF SCI., (Apr. 2007), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2610593/. Moreover, "restrictions to data" hinder the ability to trace guns from first retail to those used in crimes, data which is "critical in evaluating policies designed to reduce the access of guns to criminals." *Id.*

While the presence of gun trace data is helpful to successful law enforcement investigations (and is still available for use by law enforcement organizations), the absence of such trace data, including aggregates of such data, hinders policymakers and advocates from tailoring policy proposals to the actual causes and facilitators of gun violence. Without knowing the common paths of firearms to perpetrators, it is difficult to develop targeted policy that improves gun safety. *See* Everytown for Gun Safety, Mayors Against Illegal Guns, and The National Urban League, *Strategies for Reducing Gun Violence in American Cities*, at 35 (June 2016) https://everytownresearch.org/documents/2016/06/strategies-reducing-gun-violence-american-cities.pdf (suggesting that "[o]nce cities have identified how guns are reaching prohibited possessors, they can take action to reduce that flow and make it more difficult for these high-risk people to access guns"); Kate Irby, *Nobody knows exactly how many assault rifles exist in the U.S.—by design*, MCCLATCHY, (Feb. 23, 2018), http://www.mcclatchydc.com/news/nation-world/national/article201882739.html (explaining that absent public access to gun trace data, it is virtually impossible to gauge the extent of assault rifle proliferation).

Indeed, absent public access to data concerning common pathways through which guns fall into the hands of those who use them to perpetrate crimes, reporters and advocates may never become aware that certain problematic trafficking pathways even exist. This absence of data, in turn, can prevent advocates and reporters from understanding and educating the public about factors

contributing to gun violence. Left in the dark, the public is thereby limited in its ability to marshal the most effective policy arguments to policymakers that they should address issues that contribute to the ubiquity of gun violence. As an illustration of the importance of aggregate gun trace data to addressing gun violence, "[w]hen ATF reviewed data tracing guns recovered at crime scenes back to the retailers who first sold them, [ATF] found that just 1.2 percent of gun dealers accounted for fully 54.7 percent of the traced guns." *See Strategies for Reducing Gun Violence in American Cities* at 18. Thus, the majority of crime guns recovered by law enforcement can be attributed to a very small number of "bad apple" gun dealers. *Id.* This insight, in turn, can help inform the development of policies to address gun crime and violence. Moreover, reporting on this issue can help the public become aware of the problem of "bad apple" gun dealers and can provide impetus for the public to pressure politicians to curtail the ability of "bad apple" gun dealers to put guns into the hands of individuals who use them to perpetrate crimes. Without this data, on the other hand, reporters, advocates and, ultimately, the public, may not have ever been able to develop an understanding of the significant role of a small number of "bad apple" dealers in facilitating gun crimes.

In sum, developing effective solutions to preventing gun crime and violence requires an understanding of which guns are used to perpetrate crimes and how those guns fell into the hands of the perpetrator. ATF's Firearm Trace System database contains this information. Thus, public access to the data contained in the Firearm Trace System database, particularly aggregations of such data that allow for observations of patterns of illegal gun use, can play a crucial role in the education of the public and the development of policy that can address the rash of gun violence in the United States. Indeed, data regarding guns that were used in crimes but that originated in law enforcement—the very data requested here—is important to determine the extent of the problem and to inform the development of policies designed to reduce the risk of such guns being used for violent crimes.

## IV. ARGUMENT

The Freedom of Information Act ("FOIA") carries with it a presumption in favor of disclosure and the public's right of access to government information. The Tiahrt Amendment explicitly acknowledges the public's rights with regard to the sort of "statistical aggregate

information" at issue here.  ATF's overly-restrictive interpretation of the Tiahrt Amendment and its refusal to release any aggregates of data (outside of what it has already chosen to publish), however, effectively forecloses the public's ability to access such information.  This is improper.  The Tiahrt Amendment should not be construed so as to allow ATF to circumvent FOIA and deny the public its right to learn and know important information about the root causes of a national crisis.

**A.     FOIA Requires that the Tiahrt Amendment Be Interpreted Narrowly**

1.   FOIA Facilitates Public Access to Information

From its first iteration, FOIA was designed "to ensure informed citizens, vital to the functioning of a democratic society."  *See FOIA.gov*, U.S. DEP'T OF JUSTICE, *available at* https://www.foia.gov/ (last visited May 31, 2018).  Federal agencies are required to disclose any information requested under FOIA unless disclosure would harm an interest protected by an explicitly enumerated exception or is prohibited by statute.  *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 770 (9th Cir. 2015).  The burden lies with the agency of proving that information requested is exempt from disclosure.  *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989).  In other words, FOIA carries a presumption of disclosure.  *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (finding that FOIA should be interpreted with a "strong presumption in favor of disclosure").

Since its enactment, there has been a continuing expansion of information requested pursuant to FOIA, both in terms of volume and specificity of information sought.  *See* Lily Rothman, *FOIA at 50: How American Views of Transparency Have Changed*, TIME, (July 21, 2016), http://time.com/4408574/foia-50-american-transparency-polls/.  Additional legislative developments since FOIA's enactment have strengthened its foundational premise:  that information in the hands of the government should be freely given to the public upon proper request.  As The Openness Promotes Effectiveness in our National Government Act of 2007, signed into law on December 31, 2007 explained, congressional intent presumes FOIA should be interpreted as a "continuously developing government disclosure mechanism . . . to accommodate both technological advancements and society's maturing interests in a transparent and fully responsible government." 110 S. Rep. 59. (2007).

WHITE & CASE LLP
ATTORNEYS AT LAW

AMERICAS 94758042 (2K)                                7
BRADY CENTER'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
3:17-CV-06557-JSC

On several occasions, the Supreme Court has reiterated the breadth of FOIA and the necessity of full disclosure of information not explicitly excluded from FOIA's scope.  For instance, the Court has favorably cited to a congressional report explaining that, "[i]t is the purpose of the present bill . . . to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language . . . ."  *EPA v. Mink*, 410 U.S. 73, 80 (1973) (citing S. Rep. No. 813, 89th Cong., 1st Sess., 5 (1965)).  When the Court was again presented with another opportunity "[t]o make crystal clear the congressional objective [behind FOIA]," it found that "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny, Congress provided in [5 U.S.C.] § 552(c) that nothing in the Act should be read to authorize the withholding of information or limit the availability of records to the public, except as specifically stated." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (internal quotations omitted).   In addition to interpreting the Act broadly, the Supreme Court has simultaneously interpreted the nine articulated exceptions from disclosure under 5 U.S.C. § 552(b) narrowly, noting that "these limited exceptions do not obscure the basic policy that disclosure, not secrecy is the dominant objective of the Act." *Id.*  Even years later, when faced with the issue of transparency versus privacy, the Supreme Court explained that "FOIA's central purpose is to ensure that the Government's activities be opened to the sharp eye of public scrutiny." *Reporters Comm. for Freedom of Press*, 489 U.S. at 774; *see also Rose*, 425 U.S. at 361 (1976) (reiterating that FOIA's "exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act").

The Ninth Circuit too has confirmed that FOIA should be broadly interpreted, given that "[g]overnment transparency is critical to maintaining a functional democratic polity, where the people have the information needed to check public corruption, hold government leaders accountable, and elect leaders who will carry out their preferred policies." *Hamdan*, 797 F.3d at 769-70. It has affirmed that FOIA was enacted to promote "government transparency [which] is critical to a functioning democracy, but may be difficult to achieve against unwilling officials." *Yagman v. Pompeo*, 868 F.3d 1075, 1078-79 (9th Cir. 2017).  Similarly, in *Kowack v. U.S. Forest Serv.*, the Ninth Circuit explained that FOIA "adopt[s] a baseline presumption that ***information in***

AMERICAS 94758042 (2K)

8

BRADY CENTER'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
3:17-CV-06557-JSC

WHITE & CASE LLP
ATTORNEYS AT LAW

*the hands of the government belongs to the people* and must be disclosed on request." 766 F.3d 1130, 1131 (9th Cir. 2014) (emphasis added).

### 2. Limitations on Access to Information Requested Pursuant to FOIA Should Be Interpreted Narrowly

There is nothing in the Tiahrt Amendment that suggests departing from FOIA's central purpose of disclosure. Nor does anything suggest that the limitations it places on disclosure should be interpreted any differently than other statutory restrictions on FOIA disclosure: narrowly. Indeed, there is ample authority suggesting that disclosure of gun trace data of any kind (even individual trace data now explicitly prohibited from disclosure by the Tiahrt Amendment), does not implicate any concern articulated in FOIA that would militate towards nondisclosure. For example, a United States District Court for the Northern District of Illinois held that trace data requested by the City of Chicago was not exempted from disclosure under any of FOIA's exceptions. *City of Chicago v. U.S. Dep't of Treasury*, No. 01 C 3835, 2002 U.S. Dist. LEXIS 3813, at *6-14 (N.D. Ill. Mar. 7, 2002). Despite ATF's objections that disclosure of individual trace data could imperil law enforcement operations and despite testimony from ATF officials that trace data disclosure could lead an individual to "piece together various types of data" and generally "connect the dots," the court held that "the public interest in facilitating the analysis of gun trafficking is great," and significantly outweighed ATF's objections to disclosure of this type of data. *Id.* at *10-12. Similarly, Judge Weinstein of the Eastern District of New York, noted that ATF had only a "limited need" for protecting such information, either on the basis of privacy concerns or concerns about protecting ongoing law enforcement operations. *NAACP v. Acusport Corp.*, 216 F. Supp. 2d 59, 60 (E.D.N.Y. 2002) (allowing disclosure of gun trace information). In other words, disclosure of trace information would not significantly jeopardize ongoing actions of law enforcement. *See id.*

For many years before the enactment of the Tiahrt Amendment, trace data was fully and regularly disclosed to the public (subject to FOIA's exemptions), with no negative consequences whatsoever; as these courts recognize, FOIA's exemptions were more than adequate to shield any potentially damaging information from disclosure, such as information that might adversely affect an ongoing law enforcement investigation.

WHITE & CASE LLP
ATTORNEYS AT LAW

### B. The Tiahrt Amendment Specifically Exempts Statistical Aggregate Data

The Tiahrt Amendment provides specific restrictions on ATF's use of appropriated funds to disclose the contents of the Firearms Trace System Database, but includes language clarifying that this proviso does not prevent the ATF from releasing statistical aggregate data upon request: "no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System Database maintained by the [ATF] . . . except that **this proviso shall not be construed to prevent** . . . **the publication of** . . . **statistical aggregate data** regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations[.]" Pub. L. 112-55, 125 Stat. 552, 609-610 (2011) (emphasis added).

Not only does the Tiahrt Amendment specifically exempt "statistical aggregate data" from its restrictions on the release of gun trace data, it expressly contemplates the release of such information. *Id.* Indeed, ATF itself releases annual reports including certain such aggregated data. Thus, the Tiahrt Amendment cannot be interpreted so as to prevent the release of "statistical aggregate data."[3]

### C. ATF Is Attempting to Impermissibly Insulate Itself from Complying with Appropriate FOIA Requests

DOJ argues that releasing the aggregate data requested by Plaintiff would require ATF to create a "new record" or "new document"—a task which the government is not obligated to perform under FOIA. Gov. Br. at 2-4 (citing *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 161-62 (1975); *Zemansky v. EPA*, 767 F.2d 569, 573-74 (9th Cir. 1985); *Snyder v. Dep't of Def.*, No. 14-cv-01746-KAW, 2015 WL 9258102 at *7 (N.D. Cal. Dec. 18, 2015); *LaRouche v. SEC*, 289 Fed. App'x 231, 231-32 (9th Cir. 2008) (unpublished)). This argument ignores the context of those court decisions. In cases in which courts deny requests for aggregate data on the basis that it would require the creation of a "new record," the information underlying the "new record" is typically available to the requesting party and thus, the requesting party can simply request the

---

[3] To the extent that the Parties dispute whether the Tiahrt Amendment imposes restrictions on the release of "statistical aggregate data," the Brady Center agrees with Plaintiff's statutory construction analysis and sees no reason to add duplicative briefing on the issue.

underlying data and then aggregate the data for itself. As the United States District Court for the District of Columbia observed:

> FOIA requires agencies to disclose all non-exempt data points that it retains in electronic databases . . . and thus although the [agency] may not be required to produce an index or database listing in response to a FOIA request, it *can* be required to hand over the contents of entire databases of information, to the extent those contents are not exempt from disclosure. . . . Despite the fact that the [agency] can continue to escape the production of database listings under the FOIA if it wishes, [it] may nevertheless find it more efficient to begin producing such database listings upon request because failing to do so may prompt requesters to seek the reams of data underlying such listings instead.

*Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 272 (D.D.C. 2012). Thus, although courts have found that FOIA does not require an agency to create a new record, those holdings did not foreclose a requesting party from ultimately obtaining the data sought. Instead, the courts merely place the burden of aggregation (if such aggregation has not already been done) on the requesting party rather than the government agency.

Here, however, where the Tiahrt Amendment restricts access to the underlying individual trace data (which, if available, would allow the requesting party to create the sought-after aggregation of data for itself), ATF's refusal to aggregate their data (or its cherry-picking of which data to aggregate or decline to aggregate) creates a loophole that effectively thwarts *any* disclosure of any gun trace data that ATF does not want to release. This defies the express language and intent of FOIA and even contradicts the Tiahrt Amendment, which clearly contemplates that "statistical aggregate data," separate from that included in ATF's annual reports, can be made available to the public.

In fact, it is unclear whether ATF would even have to "create a new record" to comply with Plaintiff's request. Here, ATF has already compiled the information requested into a database, and there is no dispute that the information sought is already included in the database. *See* Gov. Br. at 7-8 (citing Houser Decl. at 20, 24-26). As DOJ admits, to provide Plaintiff with the information

WHITE & CASE LLP
ATTORNEYS AT LAW

sought, all ATF would have to do is sort its database by fields that it has already collected and provide the result to Plaintiff. *Id.* at 7 ("In order to provide [the information requested], ATF would need to run one or more searches on the Firearms Trace System database, compile those searches, identify the requested data, and format that data . . . ."). It is unclear that doing so would even constitute "creating" a record. *See Nat'l Sec. Counselors*, 898 F. Supp. 2d at 270 (noting that "if the agency already stores records in an electronic database, searching that database does not involve the creation of a new record[,]" and that "sorting a pre-existing database of information to make that information intelligible does not involve the creation of a new record").

Moreover, as DOJ implicitly acknowledges, the burden of complying with Plaintiff's request is minimal. DOJ's argument concerning burden is premised on the assertion that requiring it to release statistical aggregate data (beyond that which ATF chooses to disclose as part of its annual reports) could open it to "an almost limitless number of requests for aggregate statistical data that FOIA requestors could make regarding the data." Gov. Br. at 8. But, this statement is true of data contained within any large database that contains numerous fields and sheds no light on whether *this* FOIA request is impermissibly burdensome. DOJ's framing ignores that when analyzing the burden of complying with a FOIA request, the burden is determined by examining whether complying with the *actual FOIA request made* is unduly burdensome. *See e.g.*, *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 151 (D.D.C. 2013) (explaining that the court would address separate FOIA requests and "the considerations related to each request in turn"); *Shapiro v. CIA*, 170 F. Supp. 3d 147, 155-56 (D.D.C. 2016) (explaining that when an agency asserts that a request would be unduly burdensome, it "bears the burden to provide a sufficient explanation as to why ***such a search*** would be unreasonably burdensome.") (emphasis added). The showing an agency must make to demonstrate that a request is unduly burdensome is "substantial," *id.* at 156, and conclusory statements alone will not suffice to establish undue burden. *Hall v. CIA*, 881 F. Supp. 2d 38, 53 (D.D.C. 2012) (denying agency's assertion that complying with a FOIA request was unduly burdensome because the agency "remained silent on the issue of estimating the man-hours involved" in responding to the request).

WHITE & CASE LLP
ATTORNEYS AT LAW

AMERICAS 94758042 (2K)            12
BRADY CENTER'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
3:17-CV-06557-JSC

In other words, that there are numerous ways the data at issue could be filtered is no excuse to not provide any data at all.  Similarly, that other potential FOIA requestors could seek *other* statistical aggregates of the data contained within the Firearms Trace System database is no reason to deny Plaintiff's proper request here, especially where the Tiahrt Amendment makes clear that such data is not restricted from disclosure.

DOJ's argument turns the policy preferences animating FOIA on their head.  DOJ essentially concedes that its real concern in complying with requests for "statistical aggregate data" from the Firearm Trace System database is that requiring it to release such data would "[a]llow FOIA requestors to determine what statistical data ATF prepares and discloses to the public." *See* Gov. Br. at 8.  Contrary to DOJ's protestations, this is a feature of FOIA, not a bug.  As FOIA makes clear, government data and information belongs to the people, unless there is an explicit statutory prohibition on its release.  *See, e.g.*, *Kowack*, 766 F.3d at 1131 (explaining that FOIA operates under "a baseline presumption that information in the hands of the government belongs to the people and must be disclosed on request").  Indeed, providing an avenue to guarantee public access to information that the government may want to withhold is precisely why FOIA was enacted in the first place:  in a democracy the people should be able to know what the government is up to, *especially* when it is unflattering or uncomfortable for the government.  *Yagman*, 868 F.3d at 1078-79 (9th Cir. 2017) ("Congress enacted FOIA in recognition that government transparency is critical to a functioning democracy, but may be difficult to achieve against unwilling officials.").

Given that the Tiahrt Amendment *explicitly* contemplates public access to "statistical aggregate data," and that FOIA carries a strong preference for public access to information not explicitly prohibited, ATF should not be allowed to shield aggregate data from the public due to a fear that complying with future proper requests would be burdensome or that it would be required to release data beyond what it chooses to publicize.  This is especially true, as here, where the information at issue is maintained in an electronic database and can be aggregated with limited burden.

WHITE & CASE LLP
ATTORNEYS AT LAW

AMERICAS 94758042 (2K)                    13
BRADY CENTER'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
3:17-CV-06557-JSC

## V. CONCLUSION

For the foregoing reasons, the Brady Center requests that this Court deny Defendant's Motion for Summary Judgment and grant the Plaintiff's Cross-Motion for Summary Judgment.

Respectfully submitted,

DATED: May 31, 2018

By:  /s/ *Heather M. Burke*

Heather M. Burke
Email:  hburke@whitecase.com
Bijal V. Vakil
Email:  bvakil@whitecase.com
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA, 94306
Telephone: (650) -

—and—

Paul B. Carberry (*pro hac vice*)
Email: pcarberry@whitecase.com
Martin B. Sawyer
Erika L. Shapiro
Michael-Anthony B. Jaoude
Lindsey B. Cherner
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

*Attorneys for Amicus Curiae
Brady Center to Prevent Gun Violence*

WHITE & CASE LLP
ATTORNEYS AT LAW

AMERICAS 94758042 (2K)            14
BRADY CENTER'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
3:17-CV-06557-JSC