D. Victoria Baranetsky (Cal. Bar No. 311892)
THE CENTER FOR INVESTIGATIVE
REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
vbaranetsky@revealnews.org
Telephone: (510) 982-2890

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

THE CENTER FOR INVESTIGATIVE
REPORTING,

       Plaintiff,

  v.

UNITED STATES DEPARTMENT OF
JUSTICE,

       Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 3:17-cv-06557-JSC

**PLAINTIFF'S SURREPLY TO
DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION FOR SUMMARY
JUDGMENT AND PLAINTIFF'S REPLY
IN SUPPORT OF ITS CROSS MOTION
FOR SUMMARY JUDGMENT**

Date:  June 28, 2018, 9:00 a.m.
Courtroom: F, 15th Floor
     U.S. District Courthouse
     450 Golden Gate Avenue
     San Francisco, California
Judge: Hon. Jacqueline S. Corley

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES......................................................................................................iii

I.  INTRODUCTION..........................................................................................................1

II. ARGUMENT .................................................................................................................2

    A.    CIR IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE GOVERNMENT FAILED TO
FULFILL ITS OBLIGATIONS TO CONDUCT A REASONABLE SEARCH AND SEGREGATE RESPONSIVE
DOCUMENTS ...................................................................................................................... 7

    B.    THE PLAIN LANGUAGE OF THE TIAHRT AMENDMENT PERMITS DISCLOSURE OF
AGGREGATE TRACE DATA................................................................................................... 7

III.    CONCLUSION ......................................................................................................... 10

1

**TABLE OF AUTHORITIES**

2

**CASES**

3
*American Immigration Lawyers Association v. Executive Office for Immigration Review*, 830 F.3d 667 (D.C. Cir. 2016) ...................................................................................................4

4
*Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504 (D.C. Cir. 2011) ..................2

5
*Carcieri v. Salazar*, 555 U.S. 379 (2009) .....................................................................................8

6
*City of Chi. v. U.S. Dept. of Treasury, Bureau of Alcohol, Tobacco, and Firearms*, 423 F. 3d 777 (7th Cir. 2005) ..........................................................................................................10

7
*City of New York v. Beretta U.S.A. Corp.*, 429 F. Supp. 2d 517 (E.D.N.Y. 2006) .......................8

8
*Elec. Frontier Found. v. Dep't of Justice*, No. 3:2016-cv-02041, 2016 U.S. Dist. LEXIS 177630 (N.D. Cal. 2016) ......................................................................................................6

9
*Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759 (9th Cir. 2015) ...................................................7

10
*In re Del Biaggio*, 834 F.3d 1003 (9th Cir. 2016) .........................................................................8

11
*Krikorian v. Dep't of State*, 984 F.2d 461 (D.C. Cir. 1993)..........................................................4

12
*Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964 (9th Cir. 2009) ...................................................7

13
*Lane v. Dep't of Interior*, 523 F.3d 1128 (9th Cir. 2008) .............................................................5

*Long v. U.S. Dep't of Justice*, 450 F. Supp. 2d 42 (D.D.C. 2006) ................................................4

14
*Nakano v. United States*, 742 F.3d 1208 (9th Cir. 2014)..............................................................8

15
*National Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975)............................6

16
*Nat'l Sec. Counselors v. CIA*, 898 F.Supp.2d 233 (D.D.C. 2012) ................................................6

17
*Negusie v. Holder*, 555 U.S. 511 (2009).......................................................................................7

*Oglesby v. U.S. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990).......................................................2

18
*Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143 (9th Cir. 2008)...........................................4

19
*United States v. Rentz*, 777 F.3d 1105 (10th Cir. 2015) ...............................................................8

20
*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989)..........9

21
*Reep v. U.S. Dep't of Justice*, No. 16-cv-1275-RCL, 2018 WL 1461902 (D.D.C. March 23, 2018) ......................................................................................................................10

22
*Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548 (D.C. Cir. 1994) .................................................3

23
*Weisberg v. U.S. Dep't. of Justice*, 745 F.2d 1476 (D.C. Cir.1984) .............................................3

24
*Wightman, Jr. v. Bureau of Alcohol, Tobacco & Firearms*, 755 F.2d 979 (D.C. Cir. 1985).........4

25
*Willamette Industries, Inc. v. United States*, 689 F.2d 865 (1982)................................................4

*Zemansky v. EPA*, 767 F.2d 569 (9th Cir. 1985) ..........................................................................2

26

27

**STATUTES**

28

5 U.S.C. § 552 ...........................................................................................................*passim*

Consolidated Appropriations Act of 2012, Pub. L. No. 112–155, 125 Stat. 552 ...................... 1, 2

Fed. R. Bankr. P. 9037(a) ................................................................................................................5

Fed. R. Civ. P. 5.2(a) ......................................................................................................................5

Fed. R. Crim. P. 49.1(a) ..................................................................................................................5

Fed. R. App. P. 25(a)(5) ..................................................................................................................5

**OTHER AUTHORITIES**

Amici Curiae Brief of the Reporters Committee for Freedom of the Press and 13 Media
Organizations in Support of Appellants, *Sander, et. al., v. State Bar of Calif.*, No. CPF-08-508880
Cal.App.1st (2018) .........................................................................................................................7

Brief Amicus Curiae of Electronic Frontier Foundation in Support of Appellants, *Sander, et. al., v.
State Bar of Calif.*, No. CPF-08-508880 Cal.App.1st (2018) ....................................................8-9

Charlie Savage, *U.S. Releases Rules for Airstrike Killings of Terror Suspects*, N.Y. TIMES, Aug. 6,
2016 .................................................................................................................................................5

Oxford Dictionary of English (2010) .........................................................................................8, 9

## I.      INTRODUCTION

This action ultimately depends on the question of whether the Department of Justice ("DOJ"), Bureau of Alcohol, Tobacco, Firearms and Explosives Security ("ATF") fulfilled its obligations under the Freedom of Information Act, 5 U.S.C. § 552 to search, segregate, and redact records from ATF's Firearm Trace System.  The answer to that question is clearly no.  The government tries to divert the Court's attention from its failure by claiming that searching and redacting the ATF database amounts to the production of new documents.  That argument appears to be merely a circuitous route taken to avoid its obligations under the law.

Additionally, there remains the simple question of basic statutory interpretation: whether the Tiahrt Amendment to the Consolidated Appropriations Act of 2012, Pub. L. No. 112–155, 125 Stat. 552 ("2012 Appropriations Act") permits disclosure of aggregate trace data requested pursuant to the Freedom of Information Act, 5 U.S.C. § 552.  The answer to that question is clearly yes according the plain language of the statute as well as the legislative history.  *See* 125 Stat. 552, 609–610 (explicitly permitting the publication of "statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations").  While the Tiahrt Amendment certainly prohibits ATF from publishing individual trace data that issue is not at hand, as any identifying information can be redacted – just as the ATF has done in other circumstances.

For these simple reasons, because the DOJ has ignored the plain language of the Tiahrt Amendment and failed to meet its burden under the FOIA to search, redact and disclose agency records, this Court should deny the government's motion for summary judgment and grant CIR's cross motion for summary judgment.  CIR respectfully requests entry of an order compelling the DOJ to immediately disclose the improperly withheld records.

## II.     ARGUMENT

### A.     CIR is Entitled to Summary Judgment Because ATF Failed to Fulfill Its Obligations to Conduct a Reasonable Search and Segregate Responsive Documents

#### 1.     ATF Failed to Perform an Adequate Search for Responsive Records

There is no debate that FOIA requires a responding agency to conduct "a search reasonably calculated to uncover all relevant documents." *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985); *see also* 5 U.S.C. § 552(a)(3)(C).  The government concedes this point in its introductory remarks, but tries to claim it would be an "empty formality" where the Tiahrt Amendment prohibits disclosure.  Gov. Reply at 1 (stating FOIA requires responding agencies to make "reasonable efforts" to search).  That response does not meet the obligations under FOIA.  The question pursuant to FOIA is the *adequacy* of the search, not whether the search will yield results. *Zemansky*, 767 F.2d at 571.  And while there is "no requirement that an agency search every record system," in order to meet the standard of reasonableness the agency must conduct a good faith search of systems likely to possess requested records.  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

Here, the government has repeatedly admitted that it failed to meet its burden.  In its reply brief, the ATF states it did not search its database as obligated under FOIA, because it would be an empty act.  Gov. Reply Br. at 6.  Similarly, the Houser Declaration states that the agency failed to conduct a search of ATF's firearms database.  *See* ECF 26–1 (Declaration of Charles J. Houser) ("Houser Decl.") at ¶¶ 25–26 (stating "that search has not been conducted" because "it would not be an automatic process" and "is a time consuming process").  But these justifications do not suffice, given that even a perfunctory search is not sufficient.  *See Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (requiring "more than a perfunctory search…").

Moreover, the government does not cite a single case to support its position that searches do not have to be conducted where it would be an "empty formality" because that standard is not law. Courts have repeatedly stated that searches must be conducted despite what may result from a search.  *See Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (citing *Weisberg v. U.S. Dep't. of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (stating pursuant to FOIA an agency must demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents, not "whether there might exist any other documents possibly responsive to the request").  Indeed, searches of documents are often timeconsuming and fruitless, but that does not evade the statutory obligation.

In addition to admitting it did not conduct a search, the government concedes that a search of its database for the requested information is readily possible.  Gov. Reply Br. at 3 (stating "ATF could search the Firearm Trace database to identify the trace records involving traces 'back to former law enforcement ownership'").  The government indeed lays out three steps necessary to produce the information, including a search.  *Id.* (To provide that information, ATF would need to (1) run searches on the database to identify the trace records themselves; (2) count those trace records in order to create the requested annualized statistical analysis of the contents of the database, and (3) then produce that new analysis.)

### 2.  ATF Failed to Fulfill Its Duty to Segregate and Redact Responsive Records

Contrary to the government's statement, CIR is not asking the agency to count every case, engage in an analysis, or produce a new report.  *See id.*  Instead, Plaintiff asks the ATF to simply search, review, and redact, as required under FOIA.  5 U.S.C. § 552(b).

Under FOIA, agencies cannot withhold disclosable information merely because the record also contains exempt information.  *Hamdan*, 797 F.3d at 779 (discussing FOIA's requirement of

segregability); *see also Willamette Industries, Inc. v. United States*, 689 F.2d 865, 867 (1982)

("The focus of the FOIA is information, not documents, and the agency cannot justify withholding

an entire document simply by showing that it contains some exempt material.").  FOIA states that

any "reasonably segregable portion of a record shall be provided to any person requesting such

record after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b).

Thus, agencies have a "duty to segregate" and provide releasable information through redaction.

*Id.*  "The burden is on the agency to establish that all reasonably segregable portions of a document

have been segregated and disclosed."  *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148

(9th Cir. 2008).  It is reversible error for the district court "to simply approve the withholding of an

entire document without entering a finding on segregability."  *Hamdan*, 797 F.3d at 779 (internal

quotation and citation omitted).

        Indeed, segregability is common.  FOIA cases often result in the traditional review and

black-marker redactions requiring the agency to parse out what is and is not disclosable.  *See*

*Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C. Cir. 1993) (stating that if materials are exempt

in broad terms under Exemption 3, portions are likely segregable); *see also American Immigration*

*Lawyers Association v. Executive Office for Immigration Review*, 830 F.3d 667 (D.C. Cir. 2016)

(stating that reasonably segregable portions should be disclosed); *Willamette Industries, Inc.*, 689

F.2d 868–69 (same); *Long v. U.S. Dep't of Justice*, 450 F. Supp. 2d 42, 48 (D.D.C. 2006) (finding

when a database contains both exempt and non-exempt information, FOIA requires agencies

disclose all non-exempt data in databases) (quotation marks omitted); *Wightman, Jr. v. Bureau of*

*Alcohol, Tobacco & Firearms*, 755 F.2d 979, 983 (D.C. Cir. 1985) (stating that even a "line-by-line

analysis" does not appear unreasonable).

        Here, the federal government should do the same exact thing it does in countless other

FOIA cases: review and redact.  More specifically, ATF should conduct a search of the ATF

- 4 -

PL'S SURREPLY TO DEF'S REPLY SUPP. OF SUMM. J.; PL'S REPLY IN
SUPP. OF CROSS MOT. SUMM. J.

database, review it to protect any identifying information, and redact any individualized data – such as the names or trace numbers excluded under the Tiahrt Amendment – just as ATF seems to have done in its APA cases.  *See* ECF 27 (Declaration of D. Victoria Baranetsky) ("Baranetsky Decl.") at Exs. 12 and 13.  To be absolutely clear, that is plaintiff's only request – that ATF follow its obligations under FOIA.  Contrary to the government's statement, CIR is not asking the agency to count every case, engage in an analysis, or produce a new report.  *See* Gov. Reply Br. at 3 (stating ATF would have to  "(1) run searches on the database…(2) count those trace records…and (3) then produce that new analysis").  By simply printing, reviewing, and redacting the contents of the database – the aggregate trace data will be released – and CIR's journalists may do the subsequent counting on their own.

Indeed, this type of review and redaction is conducted all the time by various branches of government.  For instance, federal agencies engage in this type of review and redaction in countless FOIA cases, involving requests of much greater sensitivity.  *See* Charlie Savage, *U.S. Releases Rules for Airstrike Killings of Terror Suspects*, N.Y. TIMES, Aug. 6, 2016, http://nyti.ms/2aJTOX8 (2d Baranetsky Decl., Ex. 2) (declassifying portions of documents about military drone policies).  Courts also engage in this type of action.  According to federal rules of procedure, courts provide for various forms of redactions in court filings to similarly ensure a presumption of openness.  *See* Fed. R. Bankr. P. 9037(a); Fed. R. Civ. P. 5.2(a); Fed. R. Crim. P. 49.1(a); Fed. R. App. P. 25(a)(5) (incorporating by reference the other rules of procedure on this matter).

Lastly, if the Court is concerned about the disclosure of any segregable information, it may also choose to conduct an *in camera* inspection.  *See Lane v. Dep't of Interior*, 523 F.3d 1128, 1136 (9th Cir. 2008).  *In camera* inspection may be appropriate where the "government testimony and detailed affidavits — has first failed to provide a sufficient basis for a decision."  *Id.*; *see also*

*Elec. Frontier Found. v. Dep't of Justice*, No. 3:2016-cv-02041, 2016 U.S. Dist. LEXIS 177630, *60–61 (N.D. Cal. 2016) (granting the request for *in camera* review).  Here, where the government's affidavits have stated that it has not conducted a search and never mentioned the possibility for segregability or redaction – as ATF has done in numerous APA cases – *in camera* review appears appropriate.

### 3.   Plaintiff's Request for the Government to Search and Redact Is Not A Request for ATF to Create New Documents.

Plaintiff agrees that there is no dispute over the question of whether ATF can be compelled to create a new document in response to plaintiff's FOIA request.  The answer to that question is clearly no.  *See, e.g.*, *National Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 161–62 (1975).  However, as stated by the district court in *Nat'l Sec. Counselors v. CIA*, 898 F.Supp.2d 233, 259 (D.D.C. 2012), while "[p]roducing a listing or index of records" may amount to a new document, "producing particular points of data (*i.e.*, the records themselves)" and redacting exempt material would not amount to a new production.  Gov. Reply at 2–3 (citing *Nat'l Sec. Counselors*).  As the district court in *Nat'l Sec. Counselors* further explained, "sorting a database by a particular data field (*e.g.*, date, category, title)" through "the application of codes or some form of programming…does not involve creating new records."  898 F. Supp. 2d at 259.

Here, as previously clarified, all plaintiff requests are the "particular points of data" in the database and for the rest of the document to be redacted.  While the government states that "plaintiff is seeking something like a list or index of certain firearm trace records, or, more precisely, certain statistical data *derived* from such a list or index" that is not true.  Gov. Reply Br. at 3.  As previously stated, all Plaintiff seeks is the resulting query from the search of the database, that the government has admitted can be conducted, *see* Houser Decl. ¶ 24, and for that content to be reviewed and redacted.  *See supra* at 7–8; *see also* Gov. Br. 3–4 (stating ATF may use a code

"indicating 'THIS FIREARM WAS TRACED TO A GOVERNMENT AND/OR LAW ENFORCMENT AGENCY.'").  That is request is distinct from asking the government to tally the number of individual gun traces originating from law enforcement or requesting an index of the contents of the database.

Lastly, as a matter of public policy, ruling in favor of the government's characterization would go against the intention of FOIA, and possibly put many government databases beyond the reach of the FOIA.  *See generally* Amici Curiae Brief of the Reporters Committee for Freedom of the Press and 13 Media Organizations in Support of Appellants, *Sander, et. al., v. State Bar of Calif.*, No. CPF-08-508880 Cal.App.1st (2018) (2d Baranetsky Decl., Ex. 3) (explaining why contents of a state database should be released under the California Public Records Act – the state analog to FOIA – to disclose aggregate data).

### B.    The Plain Language of the Tiahrt Amendment Permits Disclosure of Aggregate Trace Data

FOIA demands that federal agencies publish all public information upon a request unless the information falls within one of nine exemptions identified at 5 U.S.C. § 552(b).  *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 70 (9th Cir. 2015).  Exemptions under FOIA are narrowly construed because there is a "strong presumption in favor of disclosure."  *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009).  Here, the federal government also attempts to argue that ATF is not required to disclose the requested data pursuant to Exemption 3 because the Tiahrt Amendment prohibits disclosure of data.  *See* Gov. Reply Br. at 6 (stating "Subpart (C) permits the 'publication' by ATF of 'annual statistical reports' regarding the firearms industry and specified 'statistical aggregate data.' Subpart (C) does not mention FOIA or use the term 'release.').  That argument fails according to simple principles of statutory construction.

In determining a question of statutory interpretation, the analysis begin with the plain language of the statute.  *Negusie v. Holder*, 555 U.S. 511, 542 (2009).  If the "statutory text is plain

- 7 -

and unambiguous[,]" the rules of construction require courts to "apply the statute according to its terms." *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009).  If statute is ambiguous, courts may then look to legislative history.  *In re Del Biaggio*, 834 F.3d 1003, 1010 (9th Cir. 2016) (citing *Nakano v. United States*, 742 F.3d 1208, 1214 (9th Cir. 2014)).

Here, the Tiahrt Amendment's language is plain and clear.  The rider not only allows but *mandates* that ATF should be permitted to publish "statistical aggregate data" contained in the ATF database.  The rider enumerates three categories of information that "shall not" be prevented from "publication" in order to effectuate the goals of the statute.  125 Stat. 552, 609–610 (emphasis added).  This plain language should end the analysis.  *See United States v. Rentz*, 777 F.3d 1105, 1109 (10th Cir. 2015) ("[U]ntil a clue emerges suggesting otherwise, it's not unreasonable to think that Congress used the English language according to its conventions."); *City of New York v. Beretta U.S.A. Corp.*, 429 F. Supp. 2d 517, 524 (E.D.N.Y. 2006) (interpreting the Tiahrt rider).

The government tries to obscure the plain and ordinary meaning of the word "publication" by contrasting it with the word "release."  Gov. Reply at 6.  ATF suggests that because Congress did not use the word release, the rider only permits ATF to publish aggregate data in new reports. Gov. Reply at 6.  However, publishing aggregate data – is exactly the type of action requested in this instance.  "Publication" according to the Oxford Dictionary of English means "the preparation and issuing" of information – or the "action of making something generally known" to the public. Oxford Dictionary of English (2010).  Where statistical data requires preparation, such as review and redaction before disclosure – "publication" is even more appropriate than "release" because it takes into account agency's responsibility to review and redact individual information.  Indeed, agencies are often said to prepare, and "publish" aggregate datasets pursuant to various public records laws.  *See generally* Brief Amicus Curiae of Electronic Frontier Foundation in Support of

Appellants, *Sander, et. al., v. State Bar of Calif.*, No. CPF-08-508880 Cal.App.1st (2018) (2d Baranetsky Decl., Ex. 1) (discussing throughout aggregate "datasets that are published").

Moreover, the basic meaning of the word "publication" is to publish for public accountability.  For instance, according to dictionary, the root word of "publication" is – "publicare" which means "to make public."  Oxford Dictionary of English (2010).  This is description perfectly aligns with the very heart of FOIA.  *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) ("Official information that sheds light on an agency's performance of its statutory duties falls squarely within [the FOIA's] statutory purpose.").  Thus, while "release" would admittedly also effectuate that purpose, it does not negate the plain and ordinary meaning of the word "publication."  The two words are not mutually exclusive.

Indeed, ATF has advocated for this exact interpretation of the word "publication" under the Tiahrt Amendment.  In several Administrative Procedure Act cases, ATF justified the release of aggregate trace data outside the confines of a government prepared report by citing this precise language.  *See* ECF 27 Baranetsky Decl. at Exs. 12 and 13; *see also* Gov. Reply Br. at 8.  This data is publicly available on case dockets.  The government tries to diminish this fact by stating that the Tiahrt Amendment expressly permits disclosure under the APA, which is why release was permitted.  However, the ATF – in its briefs in *Ron Petersen* and *10 Ring Precision* – cited section (C) to permit "publication"; it did not mention the sections of the rider that the government now raises.  Baranetsky Decl. at Exs. 12 and 13.  Ultimately, the agency's own actions clearly show that ATF similarly interprets "publication" as permitting printing and redacting available aggregate data.  *Id.*

Moreover, for sake of argument, even if this court finds that there is ambiguity in the word "publication," looking to the legislative history shows that publication of aggregate data would

- 9 -

effectuate Congress' intent.  Several instances in the Congressional record reveal that the twin aims of the Tiahrt Amendment are: 1) to mask the identity of individuals and specific law enforcement investigations, and 2) to disclose data in certain circumstances for the benefit of the public.  *See* Baranetsky Decl., Ex. 25 (stating in hearings before Congress – the failure to produce aggregate data "depriv[ed] **the public** along with government and law enforcement officials, of valuable information about guns and crime") (emphasis added); *see also* Baranetsky Decl., Ex. 24 (similar).  It is abundantly clear that aggregate data would not risk circumvention of the law, invade privacy, and it will certainly benefit the public and government officials who need access to information necessary for the public health and well-being of the country.

Lastly, the government warns this court not to "undo the 'change in substantive FOIA law' effected by the Consolidated Appropriations Act of 2005."  Gov. Reply Br. at 6.  However, there is no substantive FOIA law on this question, which is a question of first impression.  Indeed, *all* of the cases cited by the government have dealt with interpreting the first half of the Tiahrt rider and not exception (C), involving release of aggregate data.  Gov. Reply Br. at 5–6 (citing *City of Chi. v. U.S. Dept. of Treasury, Bureau of Alcohol, Tobacco, and Firearms*, 423 F. 3d 777, 781–82 (7th Cir. 2005); *Reep v. U.S. Dep't of Justice*, No. 16-cv-1275-RCL, 2018 WL 1461902, at *4–5 (D.D.C. March 23, 2018)).  Thus, the court would not be undoing anything by ordering the publication of aggregate data but effectuating the letter and spirit of the law.

## III.    CONCLUSION

For the foregoing reasons, the government's motion for summary judgment should be denied, and CIR's cross motion for summary judgment should be granted.

-10-

DATED: June 21, 2018                    Respectfully submitted,


                                        s/ *D. Victoria Baranetsky*
                                        D. Victoria Baranetsky
                                        THE CENTER FOR INVESTIGATIVE REPORTING
                                        1400 65th St., Suite 200
                                        Emeryville, CA 94608
                                        vbaranetsky@revealnews.org
                                        Telephone: (510) 982-2890