UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING (CIR),<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>Defendant. | Case No. 17-cv-06557-JSC<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 26, 27 |

Plaintiff Center for Investigative Reporting ("CIR") brings this action under the Freedom of Information Act ("FOIA" or "the Act") against Defendant the United States Department of Justice ("DOJ"). Plaintiff seeks aggregate data related to a firearms tracing database maintained by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). (Dkt. No. 1-1 at 2; Dkt. No. 27 at 16-17.)[1] Now pending before the Court are the parties' cross-motions for summary judgment.[2] (Dkt. Nos. 26 & 27.) Having carefully considered the parties' submissions, and having had the benefit of oral argument on June 28, 2018, the Court concludes: (1) Defendant has not proved as a matter of law that it conducted a reasonable search for documents responsive to Plaintiff's third and fourth categories of request; (2) Defendant cannot be compelled to create the information Plaintiff seeks under its third category of request; and (3) Defendant cannot be compelled to produce non-statistical aggregate data from the database.

## BACKGROUND

In March 2017, Plaintiff filed a FOIA request with the ATF seeking information regarding

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[2] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 5 & 15.)

ATF "policies and procedures involving trace reports as well as aggregated information obtained from trace reports." (Dkt. No. 22 at 2.) Plaintiff then filed suit in November 2017 seeking to compel production of the requested records pursuant to the FOIA; DOJ answered the complaint in December 2017. ATF subsequently processed Plaintiff's FOIA request and produced records in response to Plaintiff's request in January, February, and March 2018. ATF did not, however, provide information from its Firearms Trace System ("FTS") database regarding the "[t]otal number of weapons traced back to former law enforcement ownership, from 2006 to the present." (Dkt. No. 26-1 at ¶¶ 22-23.) Plaintiff contends that ATF is withholding those records in violation of the FOIA, as well as "[c]opies of any and all communications notifying law enforcement agencies when their current or former weapons have entered or been involved in [ATF firearms tracing]." (Dkt. No. 27 at 16-17.) Furthermore, Plaintiff asserts that ATF conducted an inadequate search for such records. (*Id*.)

## I. ATF's Firearms Tracing System

In its role as a criminal and regulatory enforcement agency, ATF is "the sole federal agency authorized to trace firearms." (Dkt. No. 26-1 at ¶ 7.) ATF's National Tracing Center carries out this function by maintaining the FTS, a law enforcement database that provides, upon request from Federal, State, local, or foreign law enforcement, "Firearm Trace Result Reports commonly referred to as 'trace data' as well as investigative leads obtained from the traced firearm." (*Id*. at ¶ 8.) The ATF initiates a firearm trace when conducting its own investigations or when requested to do so by a law enforcement agency that has "recovered a firearm or suspects a certain firearm has been used in a crime." (*Id*. at ¶ 9.)

The FTS database currently contains over 6.8 million traces, of which over 5.5 million "originated from state and local law enforcement." (*Id*. at ¶ 16.) Many of the traces in the database relate to open law enforcement investigations. (*Id*. at ¶ 17.)

## II. Plaintiff's FOIA Request

Plaintiff's March 2017 FOIA request sought: (i) "[t]he National Tracing Center's internal completion codes for law enforcement weapons, current or former"; (ii) "[a]ny and all memos, communications, reports, and other documents related to E-Trace matches of current or former

2

law enforcement weapons, from 2006 to the present"; (iii) "[t]otal number of weapons traced back to former law enforcement ownership, annually from 2006 to the present"; (iv) "[c]opies of any and all communications notifying law enforcement agencies when their current or former weapons have entered or been involved in E-Trace"; and (v) "[c]opies of policies and guidance dictating how the agency handles law enforcement weapons in E-Trace." (Dkt. No. 1-1 at 2.)

### III. ATF's Document Production

ATF produced documents in response to Plaintiff's FOIA request on January 31, February 2, and March 23, 2018. (Dkt. 26-1 at ¶ 21.) According to ATF, it "produced records in whole or part (with appropriate redactions) reflecting traces of firearms to law enforcement agencies, where those records existed and could be located after a reasonable search." (*Id*.) Plaintiff "has decided not to challenge any redactions in the [interim] productions," based upon its review of "the released documents and the explanations for [ATF's] withholdings." (Dkt. No. 27 at 17.)

As noted above, Plaintiff's cross-motion for summary judgment challenges only ATF's noncompliance and search methods with respect to the third and fourth categories of Plaintiff's FOIA request—aggregate data reflecting the total number of firearms traced back to law enforcement ownership since 2006, and copies of communications notifying law enforcement agencies when their current or former firearms are involved in ATF tracing, respectively. (Dkt. No. 27 at 16-17)

### DISCUSSION

### I. FOIA CLAIMS GENERALLY

The FOIA calls for "broad disclosure of government records," *CIA v. Sims*, 471 U.S. 159, 166 (1985). To ensure broad disclosure, the FOIA "gives individuals a judicially-enforceable right of access to government agency documents." *Lion Raisins v. Dep't of Agric.*, 354 F.3d 1072, 1079 (9th Cir. 2004) (*overruled on other grounds by Animal Legal Defense Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016)); 5 U.S.C. § 552. The FOIA provides, in relevant part, that: "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. §

552(a)(3)(A).

There is a "strong presumption in favor of disclosure." *See U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). This "general philosophy of full agency disclosure [applies] unless information is exempted under clearly delineated statutory language." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151-52 (1989) (recognizing the "specific exemptions from disclosure set forth in the Act," but noting that "these exemptions must be narrowly construed.") (internal quotation marks and citation omitted).

The Act does not, however, compel an agency to create new documents in response to a FOIA request. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161-62 (1975) (noting that the FOIA "only requires disclosure of certain documents which the law requires the agency to prepare or which the agency has decided for its own reasons to create."); *see also Yeager v. DEA*, 678 F.2d 315, 321 (D.C. Cir. 1982) ("It is well settled that an agency is not required by FOIA to create a document that does not exist in order to satisfy a request."). Nor does the Act "require agencies to conduct research by answer[ing] questions disguised as a FOIA request." *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 269 (D.D.C. 2014) (internal quotation marks and citation omitted).

Defendant argues that responding to Plaintiff's request for the third category of documents (aggregate trace data) would require ATF to create a new document. Furthermore, Defendant asserts that it is statutorily prohibited from releasing the requested data under FOIA Exemption 3 in conjunction with the Tiahrt Amendment. Plaintiff's cross-motion counters that ATF's search for responsive documents was inadequate, the search for and production of existing aggregate data does not entail the creation of a new document, and that ATF is improperly withholding information pursuant to FOIA exemptions.

## II. ADEQUACY OF DEFENDANT'S SEARCH

The government agency responding to a FOIA request must "demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Lahr v. NTSB*, 569 F.3d 964, 986 (9th Cir. 2009) (internal quotation marks and citation omitted). The agency can make this showing by "reasonably detailed, nonconclusory affidavits submitted in good faith." *Id.* (internal quotation marks omitted). "Affidavits submitted by an agency to demonstrate the

4

adequacy of its response are presumed to be in good faith." *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 770 (9th Cir. 2015). "The adequacy of the agency's search is judged by a standard of reasonableness, construing the facts in the light most favorable to the requestor." *Citizens Comm'n on Human Rights v. Food & Drug Admin.,* 45 F.3d 1325, 1328 (9th Cir. 1995).

Plaintiff asserts that ATF's search for the third category of records sought—statistical aggregate data reflecting the total number of firearms traced back to law enforcement ownership since 2006—was inadequate because ATF admittedly failed to conduct a search of the FTS database. Plaintiff further argues that ATF's search for the fourth category of records—copies of communications notifying law enforcement agencies when their current or former firearms are involved in ATF tracing—was inadequate because ATF failed to produce any memoranda in response to Plaintiff's request or address the search for such records in its first declaration. The Court addresses the adequacy of the searches for each category of documents in turn.

### A. Search for Aggregate Data

In support of its motion for summary judgment, ATF submitted the declaration of Charles J. Houser, the Chief of ATF's National Tracing Center, which is the division charged with maintaining the FTS database. (Dkt. No 26-1.) The Houser declaration includes detailed descriptions of the ATF's firearms tracing processes and procedures involving the FTS database, and states that Plaintiff's third category of request "concerns law enforcement data" from that database. (Dkt. No. 26-1 at ¶ 23.) The declaration states that ATF "has not released information from the FTS database in response to [that] request." (*Id*. at ¶ 22.) With respect to searches of existing records *outside* of the FTS database, the declaration states, in relevant part:

> ATF has produced records in whole or part (with appropriate redactions) reflecting traces of firearms to law enforcement agencies, where those records existed and could be located after a reasonable search.

(*Id.*) Furthermore, the declaration states:

> To my knowledge, that search [of the FTS database] has not been conducted to date and is not reflected in any existing records at the ATF that could be located after a reasonable search conducted in response to plaintiff's FOIA request.

5

(Dkt. No. 26-1 at ¶ 25.)

Setting aside the legitimacy of ATF's failure to search the FTS database, which the Court addresses below, the Houser declaration does not adequately describe the search employed for existing records outside of the FTS database. Instead, the declaration merely states that ATF conducted a "reasonable search" of "existing records." This type of conclusory statement does not satisfy ATF's burden of demonstrating an adequate search for purposes of summary judgment. *See Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 370 (D.C. Cir. 1980) (finding summary judgment improper where "issues genuinely existed as to the thoroughness of the [agency's] search" based on the failure of agency affidavits to "denote which files were searched and by whom, . . . reflect any systematic approach to document location, [or] provide information specific enough to enable [plaintiff] to challenge the procedures utilized.").[3]

This is especially so given that ATF's interim productions to Plaintiff included a redacted internal working document ("Law Enforcement Trace Log") that, according to the supplemental Houser declaration, "tracks information related to certain firearm traces for which ATF personnel may investigate the subsequent disposition of a firearm." (Dkt. No. 35-1 at ¶ 18.) The trace log "was manually created and updated by ATF employees," and lists by "assigned date" between October 2013 and April 2014 firearms purchased by law enforcement agencies. (Dkt. No. 28-1, Exh. 26.) Construing these facts in favor of Plaintiff, the trace log could arguably be construed as "aggregate data" partially responsive to Plaintiff's third category of request.

The supplemental Houser declaration discusses the production of the trace log and notes that "it does not reflect a search on or production of trace records from the Firearms Trace System database, nor does it include the underlying trace records themselves." (Dkt. No. 35-1 at ¶ 18) Thus, the trace log represents an existing document separate and apart from the FTS database. The supplemental declaration does not, however, discuss the trace log's limited date range or

---

[3] The *Weisberg* court rejected an FBI agent's similarly conclusory affidavit where the agent stated only that he had "conducted review of FBI files which would contain information that [plaintiff] requested . . . . The FBI files to the best of my knowledge do not include any information requested by [plaintiff] other than the information made available to him." *See Weisberg*, 627 F.2d at 370.

6

detail any search for similar existing records. Because the Houser declarations fail to provide more than conclusory statements describing ATF's search for other existing records outside the FTS database, ATF has not established that it is entitled to summary judgment. *Weisberg*, 627 F.2d at 370.

The supplemental Houser declaration does provide additional detail regarding ATF's search of existing records for aggregate trace data, stating:

> Dawn Scott, Chief of the Violent Crime Analysis Branch, which analyzes trace data and prepares statistical reports for the agency, confirmed in response to plaintiff's FOIA request that the Branch has not produced any reports that address the total number of firearms recovered and traced back to former law enforcement ownership.

(Dkt. No. 35-1 at ¶ 19.)

The Violent Crime Analysis Branch creates its reports using data "extracted from the FTS [database] utilizing time consuming and specialized queries pertinent to each series of reports." (Dkt. No. 26-1 at ¶ 20.) Therefore, unlike the "Law Enforcement Trace Log" discussed above, these statistical reports *do* reflect a search of the FTS database and are not "manually created and updated" separate and apart from that database. Thus, ATF's confirmation that the Violent Crime Analysis Branch has not "produced any reports" responsive to Plaintiff's request does not cure the Houser declarations' conclusory descriptions of the search employed for records outside of the FTS database that do not reflect a search of that database.

**B.    Search for Communications with Purchasing Law Enforcement Agencies**

The supplemental Houser declaration addresses, in part, the scope of ATF's search for records responsive to the fourth category of Plaintiff's request. (Dkt. No. 35-1 at ¶¶ 9-16.) The declaration describes ATF's procedures for "notifying law enforcement agencies when their current or former weapons have entered or been involved in an E-Trace," and notes that ATF "does not routinely communicate with the purchasing law enforcement agency about the trace result." (*Id*. at ¶ 10.) Instead, the results are provided to the law enforcement agency "through the Firearms Trace Result Report." (*Id*.) If ATF does contact the purchasing law enforcement agency directly, it does so through the "Firearms Services Section within the Law Enforcement Support

7

Branch." (*Id*. at ¶¶ 9-13.)

According to the declaration, ATF conducted the following search to locate such communications:

> To determine if there were any documents responsive to this request, I instructed all NTC employees, including the Firearms Services Section, to search for copies of any and all communications notifying law enforcement agencies when their current or former weapons have entered or been involved in an E-Trace.

(*Id*. at ¶ 14.)

The search yielded no responsive records. Houser explains that "the search likely did not reveal any responsive documents because such communications typically occur by telephone." (*Id*. at ¶ 16.) Although the declaration notes that "[o]n rare occasions, the Firearms Services Section may send an email to the purchasing law enforcement agency if it unable to reach anyone by telephone," the search found "no such emails." (*Id*.)

As with the Houser declaration regarding the search for aggregate data outside of the FTS database, the supplemental Houser declaration fails to provide sufficient detail as to the scope of the search for category four records. *See Weisberg*, 627 F.2d at 370 (holding that where "the affidavit gives no detail as to the scope of the examination" it is "insufficient as a matter of law to establish its completeness."). The declaration states that Houser "instructed" National Trace Center employees to search for the communications sought under the FOIA request, and does not detail the procedures *any* of those employees used in conducting that search. There is no discussion of the type of records, files, or databases searched, nor is there any indication that the employees complied with Houser's request. Instead, the declaration merely states that "[n]o NTC employee found any documents responsive to this request." (Dkt. No. 35-1 at ¶ 15.) Furthermore, the explanation for the lack of responsive records casts doubt on the adequacy of the search. Simply put, it is hard to believe that not one email exchange exists between a National Trace Center employee and a law enforcement agency discussing trace results.

For the reasons stated above, the Court concludes that ATF has not met its burden of demonstrating that it conducted a reasonable and adequate search for either category three records outside of the FTS database or category four documents. *See Lahr*, 569 F.3d at 986 ("The agency

must demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents") (internal quotation marks and citation omitted); *see also* 5 U.S.C. § 552(a)(3)(C) ("[A]n agency shall make reasonable efforts to search for the records in electronic form or format"). Accordingly, the Court DENIES Defendant's motion for summary judgment on that issue.

### III. FOIA Exemption 3 and the Tiahrt Amendment

The government agency responding to a FOIA request bears the burden of proving that the requested records fall within one of the nine statutory exemptions under the Act. *See Ray*, 502 U.S. at 173; *see also Lahr*, 569 F.3d at 973 (noting that the Act "contains nine enumerated exemptions allowing the government to withhold documents or portions of documents."). The agency may rely on affidavits to satisfy its burden of demonstrating that an exemption applies, but the affidavits must contain "reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption." *Kanman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1994) (internal quotation marks and citation omitted); *see also Shannahan v. IRS*, 672 F.3d 1142, 1148 (9th Cir. 2012) ("To justify withholding, the government must provide tailored reasons in response to a FOIA request. It may not respond with boilerplate or conclusory statements."). Courts are "required to accord substantial weight to the [agency's] affidavits." *Hunt v. CIA*, 981 F.2d 1116, 1119 (9th Cir. 1992) (internal quotation marks and citation omitted).

If an enumerated exemption applies to records requested under FOIA, the agency must provide "any reasonably segregable portion of a record . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b). The "non-exempt portions of a document must be disclosed unless the Court finds that they are inextricably intertwined with exempt portions to such a degree that separating the two would impose significant costs on the agency and produce an edited document with little informational value." *L.A. Times Commc'ns, LLC v. Dep't of Army*, 442 F. Supp. 2d 880, 893 (C.D. Cal. 2006).

ATF asserts that Exemption 3 applies to Plaintiff's FOIA third request to the extent it seeks records and information from the FTS. Exemption 3 permits an agency to withhold information that is "specifically exempted from disclosure by statute," provided that the statute:

(A)(i) requires that the matters be withheld from the public in such a matter as to leave no discretion on the issue; or
(ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and
(B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3). The Ninth Circuit employs a two-part inquiry to determine whether Exemption 3 applies to a particular FOIA request. *Hamdan*, 797 F.3d at 776. Courts must first determine whether the "statute identified by the agency is a statute of exemption within the meaning of Exemption 3." *Id*. Next, courts must ask "whether the withheld records satisfy the criteria of the exemption statute." *Id*. ATF contends that an amendment contained in annual appropriation acts from 2003 to 2012, known as the Tiahrt Amendment, exempts disclosure of FTS records.

### A. Tiahrt Amendment

The Tiahrt Amendment[4] was first attached as a rider to the Consolidated Appropriations Resolution of 2003 to prohibit disclosure of firearm trace information in response to FOIA requests.[5] *See* Pub. L. No. 108-7, 117 Stat. 11, 473-74 (2003); *see also City of Chicago v. U.S. Dep't of Treasury, Bureau of Alcohol, Tobacco and Firearms*, 423 F. 3d 777, 779 (7th Cir. 2005) (noting that the Consolidated Appropriations Resolution of 2003 "contained a rider prohibiting the use of appropriated funds" for FOIA requests seeking information from the FTS database). The 2003 iteration of the Tiahrt Amendment states, in its entirety:

> No Funds appropriated under this Act or any other Act with respect to any fiscal year shall be available to take any action based upon any provision of 5 U.S.C. 552 with respect to records collected or maintained pursuant to 18 U.S.C. 846(b), 923(g)(3) or 923(g)(7), or provided by Federal, State, local, or foreign law enforcement agencies in connection with arson or explosives incidents or the tracing of a firearm, except that such records may continue to be disclosed to the extent and in the manner that records so collected, maintained, or obtained have been disclosed under 5 U.S.C. prior to

---

[4] The Tiahrt Amendment is named after its sponsor, former U.S. Representative Todd Tiahrt (R-Kan.).

[5] Both parties reference the iterations of the Tiahrt Amendment contained in appropriations acts enacted in 2005, 2008, 2010, and 2012. The 2012 version is the most recent iteration of the amendment. Because other iterations of the amendment do not contain differences in language relevant to this matter, the Court addresses only the amendments referenced by the parties.

10

the date of the enactment of this Act.

Pub. L. No. 108-7, 117 Stat. 11, 473-74 (2003). The 2005 iteration expanded upon the original amendment, and prohibited the use of information from the FTS database in any State or Federal civil action. *See* Consolidated Appropriations Act, Pub. L. No. 108-447, 118 Stat. 2809, 2859-60 (2004). The 2005 amendment also provided an exception, however, for the "disclosure of statistical information concerning total production, importation, and exportation by each licensed importer . . . and licensed manufacturer . . . ." *Id*. The Consolidated Appropriations Act of 2008 provided two additional exceptions, stating, in relevant part:

> [B]eginning in fiscal year 2008 and thereafter, no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives . . . ; except that this proviso shall not be construed to prevent: (A) the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer . . . and licensed manufacturer . . . ; (B) the sharing or exchange of such information among and between Federal, State, local, or foreign law enforcement agencies, Federal, State, or local prosecutors, and Federal national security, intelligence, or counterterrorism officials; or (C) the publication of annual statistical reports on products regulated by the Bureau of Alcohol, Tobacco, Firearms and Explosives, including total production, importation, and exportation by each licensed importer (as so defined) and licensed manufacturer (as so defined), or statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations.

Pub. L. No. 110-161, 121 Stat. 1844, 1903-04 (2007). The most recent version of the amendment, contained in the Consolidated and Further Continuing Appropriations Act of 2012, includes near-verbatim language. *See* Pub. L. No. 112-55, 125 Stat. 552, 609-10 (2011) (providing that "during the current fiscal year and in each fiscal year thereafter" the same restrictions and exceptions apply).

### 1. The Tiahrt Amendment is a withholding statute for purposes of Exemption 3.

As noted above, ATF has the burden of showing that the Tiahrt Amendment qualifies as a withholding statute under Exemption 3. Plaintiff asserts that the Tiahrt Amendment does not qualify as a withholding statute for purposes of Exemption 3 because: (a) it allows for agency

11

discretion in the release of data from the FTS database; and (b) the 2012 amendment does not specifically cite to the OPEN FOIA Act of 2009, as required by 5 U.S.C. § 552(b)(3).

### a. Agency discretion

Plaintiff insists that ATF has discretion to release data from the FTS database because the Tiahrt Amendment does not provide specific criteria restricting its release, and ATF has disclosed statistical aggregate data in certain Administrative Procedure Act ("APA") cases. The Court does not agree.

First, the Tiahrt Amendment provides that "no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database." *See* Pub. L. No. 112-55, 125 Stat. 552, 609-10. This language leaves the agency no discretion in response to a FOIA request for such information. Plaintiff argues that the three exceptions under the Tiahrt Amendment do provide ATF with discretion in releasing information from the FTS database. Those exceptions, however, do not swallow the rule. The exceptions instead provide specific criteria allowing for the release of certain categories of information; if the information does not fall into one of those categories, it cannot be released. In other words, the exceptions do not give ATF discretion to choose the type of information it can release from the database.

Plaintiff's argument that Exemption 3 does not apply because ATF has released statistical aggregate data from the FTS database in APA cases is similarly unavailing. In the APA cases, ATF was not exercising its discretion in releasing statistical aggregate data. It was required to do so because the records were part of the administrative record underlying the challenged agency action. Most importantly, ATF was permitted to do so because exception (C) of the Tiahrt Amendment allows for the "publication of . . . statistical aggregate data." *Id.*

### b. OPEN FOIA Act of 2009

A statute enacted after the OPEN FOIA Act of 2009 must "specifically cite to [5 U.S.C. § 552(b)(3)]" in order to qualify as a withholding statute under Exemption 3. The most recent iteration of the Tiahrt Amendment, enacted in 2012, does not specifically cite to the OPEN FOIA Act of 2009. Plaintiff asserts that this is a fatal flaw. The Court does not agree, and instead adopts the holding of the majority of courts that have addressed this exact argument and concluded that

12

"disclosure prohibitions set forth by Congress in the 2005 and 2008 [versions of the Tiahrt Amendment] are still effective prospectively and beyond those fiscal years as a permanent prohibition, until such time as Congress expresses the intent to repeal or modify them." *Abdeljabbar v. Bureau of Alcohol, Tobacco & Firearms*, 74 F. Supp. 3d 158, 175-76 (D.D.C. 2014) (holding that the Tiahrt Amendment "is an appropriate statutory predicate for withholding information pursuant to Exemption (b)(3)," and "Congress's uninterrupted use of this language in appropriations bills after 2009 supports the conclusion that Congress did not intend for the judiciary to depart from this long-standing position."); *see also Fowlkes v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 139 F. Supp. 3d 287, 292 (D.D.C. 2015) (concurring with ATF that the amendment's funding restrictions are active and subject to Exemption 3); *Smith v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, No. 13-13079, 2014 WL 3565634, at *6 (E.D. Mich. July 18, 2014) (same); *Caruso v. Bureau of Alcohol, Tobacco & Firearms*, 495 Fed. Appx. 776, 778 (9th Cir. 2012) (finding that the statutory language of the Tiahrt Amendment is "within the scope of Exemption 3."); *Penn v. U.S. Dep't of Justice*, No. S-10-2494, 2012 WL 761741, at *6 n.3 (E.D. Cal. Mar. 7, 2012) ("Although it does not appear that the 2010 [Tiahrt Amendment] cites to § 552(b)(3), and although it appears to have been enacted [after the OPEN FOIA Act of 2009], because the 2005 and 2008 appropriations bills also apply here, and were enacted prior to the OPEN FOIA Act of 2009, that issue need not be addressed."), report and recommendations adopted, 2012 WL 1131537 (E.D. Cal. Mar. 28, 2012).

In line with the above, the Court concludes that the Tiahrt Amendment is a "statute of exemption within the meaning of Exemption 3." *Hamdan*, 797 F.3d at 776. As to the second prong of the exemption analysis—whether the requested records fall within the scope of the Tiahrt Amendment's prohibitions—there is no debate that Plaintiff's request seeks information from the FTS database. Thus, Exemption 3 applies to the extent Plaintiff's request seeks non-excepted data from the FTS database. The question remains, however, whether exception (C) to the Tiahrt Amendment applies to Plaintiff's request.

### 2. Exception (C) to the Tiahrt Amendment

Plaintiff argues that even if the Tiahrt Amendment qualifies as a withholding statute for purposes of Exemption 3, exception (C) to the Tiahrt Amendment, allowing for the "publication of annual statistical reports . . ., or statistical aggregate data," expressly permits ATF to disclose the statistical aggregate data--"[t]otal number of weapons traced back to former law enforcement ownership, annually from 2006 to the presen"--Plaintiff seeks. Plaintiff cites to ATF's disclosure of statistical aggregate data in APA cases—and ATF's invocation of Tiahrt Amendment exception (C) as justification for such disclosure—as evidence that Plaintiff's FOIA request is not prohibited under the amendment.

A crucial distinction exists, however, between the statistical aggregate data released by the ATF as part of the agency administrative records in the APA cases cited by Plaintiff, and the statistical aggregate data sought here. (Dkt. No. 27 at 5-6; Dkt. No. 28-1, Exh. 12-14.) The former did not require the creation of new records, but instead, represented existing records that were part of the administrative record underlying the ATF action challenged by the plaintiffs in each case. In other words, ATF did not create a new document in the APA cases in response to a plaintiff's request for specific statistical aggregate data.

As discussed below, although the Tiahrt Amendment does not prohibit the publication of *existing* statistical aggregate data, ATF cannot be compelled under the FOIA to release the specific statistical aggregate data sought here because doing so would entail the production of a new record.

## IV. PRODUCTION OF A NEW DOCUMENT

Plaintiff disputes that producing the aggregate trace data it seeks from the FTS database would require the creation and production of a new record; instead, Plaintiff maintains that ATF need only use its pre-existing and "readily available codes" to search the FTS database and produce the requested statistical aggregate data. (Dkt. No. 27 at 30.) Plaintiff is correct that searching an electronic database for pre-existing records does not create a new record. *See Nat'l Sec. Counselors*, 898 F. Supp. 2d at 270 ("[I]f the agency already stores records in an electronic database, searching that database does not involve the creation of a new record.").

Plaintiff's FOIA request, however, does not seek individual records contained in the FTS database, but instead seeks statistical aggregate data compiled *from* those records reflecting the "[t]otal number of weapons traced back to former law enforcement ownership, annually from 2006 to the present." (Dkt. No. 1-1 at 2; Dkt. No. 27 at 16-17.) In other words, Plaintiff's request seeks a statistical summary or listing of a particular subset of data points ("weapons traced back to former law enforcement ownership") derived from or contained within the FTS database. The question then is whether that statistical aggregate data already exists (in the database or otherwise); if it does not, the Court cannot compel ATF to create and produce such a record under the FOIA. *See Nat'l Sec. Counselors*, 898 F. Supp. 2d at 271 ("[A] FOIA request for a listing or index of a database's contents that does not seek the contents of the database, but instead essentially seeks information about those contents, is a request that requires the creation of a new record, insofar as the agency has not previously created and retained such a listing or index.").

The analysis in *Nat'l Sec. Counselors* is instructive. There, the plaintiff submitted a FOIA request to the CIA seeking aggregate data, including "database listings of all FOIA requesters from Fiscal Years 2008-2010 according to the fee categories to which the CIA assigned them." *Id*. at 268. The CIA refused to process the request, arguing that it would "(a) require it to create new records, as opposed to merely producing preexisting records and/or (b) require it to conduct research, as opposed to merely performing a search." *Id*. at 269. The court agreed, finding that plaintiff's request for a listing of records compiled from the database, rather than the actual records themselves, required the creation of a new record. *Id*. at 271-72.

Similarly here, there is no dispute that Plaintiff's request for statistical aggregate data derived from the FTS database requires a compilation of data points—all firearms traced to former law enforcement ownership since 2006—and seeks information that does not currently exist. While the Houser declarations do not adequately describe searches pertaining to records *outside* of the FTS database, the declarations as a whole sufficiently describe ATF's processes regarding publication of statistical data derived from *within* the FTS database to confirm that the specific information sought by Plaintiff does not exist in the form Plaintiff requests.

The first Houser declaration describes, in detail, the process undertaken by ATF in

extracting data from the FTS database to create statistical trace data and reports for publication. (Dkt. No. 26-1 at ¶¶ 19-20.) Importantly, the individual data elements in the database must be searched for and then extracted, compiled, analyzed, and manipulated using "statistical software" to create statistical trace data suitable for publication. (*Id*. at ¶ 19.) This necessarily entails the creation of a new record.

Plaintiff argues that ATF's concession that it has not conducted a search of the FTS database in response to Plaintiff's request for statistical aggregate data renders ATF's response to the third category of records sought wholly inadequate. The Court disagrees. The Houser declaration adequately describes the steps required to produce the type of statistical aggregate data Plaintiff seeks. The search for data points that reflect firearms traced back to former law enforcement ownership is only the first step. The creation of a new record is the last. Therefore, complying with Plaintiff's request for statistical aggregate data would require ATF to create a new report, something the Court cannot compel it to do under the FOIA.

Plaintiff's Surreply to Defendant's Reply in Support of Its Motion for Summary Judgment attempts to clarify that Plaintiff is not asking ATF "to tally the number of individual gun traces originating from law enforcement or requesting an index of the contents of the database." (Dkt. No. 37 at 11.) Instead, Plaintiff explains, its request seeks "the resulting query from the search of the database . . . and for that content to be reviewed and redacted." (*Id*. at 10.) Plaintiff states that if ATF "simply print[ed], review[ed], and redact[ed] the contents of the database," then the "aggregate trace data will be released" and "CIR's journalists may do the subsequent counting on their own." (*Id*. at 9.) As noted above, however, Exemption 3 through the Tiahrt Amendment bars production of data from the FTS database, and the Tiahrt Amendment necessarily extends to a collection of individual records. And exception (C) to the amendment does not apply to Plaintiff's Surreply request: although what Plaintiff now seeks may loosely be described as "aggregate data," it does not constitute "*statistical* aggregate data." Indeed, Plaintiff indicates that its journalists will create the statistics by "counting on their own." Thus, while Plaintiff's new characterization of its FOIA request may not require the creation of new documents, it runs squarely into the prohibition of the Tiahrt Amendment.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is GRANTED as to Plaintiff's third request to the extent it seeks production of data from the FTS database. Plaintiff's cross-motion for summary judgment as to the same claim is therefore DENIED. Defendant's motion for summary judgment is DENIED as to the adequacy of Defendant's search for records responsive to Plaintiff's third and fourth requests to the extent they seek records outside of the FTS database. The Court will hold a further case management conference on August 2, 2018 at 1:30 p.m. to discuss next steps in the litigation. An updated case management conference statement shall be filed by July 26, 2018.

**IT IS SO ORDERED.**

Dated: July 10, 2018

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge